OPINION of the Court, by
Ch. J. Bibb.
The circuit court of Jefferson, at the November term in the year 1808, made the following entry : “ ordered, that Gabriel J. Johnston, Esq. be sent to jail for the space of six hours for a contempt of the court.” To this Johnston prosecutes this writ of error.
Although writs of error shall, upon the demand of the party applying, be issued as matters of right, and ex debito justifies ; yet when the case is brought subjudice, it should always be a preliminary consideration, whether the writ lies in that particular. Should a writ of error be sued to revise the acts of the executive department of the government, it would readilv be acknowledged to have issued improvidently. If it lies not to revise every procedure under the authority of the government, in what cases does it lie ? That this court can exercise of right, an appellate judicial jurisdiction only, except in some specified cases of original jurisdiction, is established by the constitution of our government. Yet neither there, nor in our statutes, are the various cases specified in which an appeal to this tribunal shall be an appropriate remedy for redress of grievances. From our statutes we may collect that every case to be revised by this court, must be arranged in one of two classes, decrees of the courts of chancery, or judgments of other courts; except where they hava otherwise specially provided. In process of time, the distinction between appeals as applicable to decrees, and writs of error as applicable to judgments, has worn away, and in our statutes and courts appeals and writs of error are indiscriminately applied to decrees and judgments, regarding, in the use of those terms, the time only at which the process of removal is prayed. With this explanation we would be understood, that in applying *599 Ae law to writs of error, the same doctrine in the gen* eral would apply to appeals on like cases. Error to cases like the present is not specially permitted nor prohibited by any of our statutes, therefore in determining whether this writ lies, we must be governed by the general principles and usages of law.
The writ of error “ lyeth when a man is grieved by any error in the foundation, proceeding, judgment or execution, and thereupon it is called breve de errore cor-rigendo. But without a judgment, or an azvard in nature of a judgment, no writ of error doth lie ; for the words of the writ be si judicium redditum sit.” — -Co. Litt. fol. 288, b. That the judgment upon which th© writ of error lies, must be one which has been given in an action is maintained by high authority. Accordingly it is said, in'Co. Litt. fol. 289 a, “ the writ of error and the writ of attaint do ensue the nature of the former action.” Therefore to maintain a writ of error, there must have been an action, and a. judgment in that action. After having divided actions into criminal and civil, and subdivided the latter into real, personal and mixed, Coke gives us the definition of an action, in his commentary on Littleton, (fol. 285 a) “ and generally actio nihil aliud est, quam jus prosequendi in judicio, quod sibi debutur. Or, an action is nothing else than a demand at law of one’s right. Again he says, fob 289 a, that an action, real or personal, doth imply a recovery of something in the realty or personalty, or a restitution to the same.” Now, a mixed action can imply nothing less. In the same work, (fol. 39 a,) after giving the definition of judgment, “ quasi juris dictum, the very voice of law and right,” he says the ancient words of judgment are consideration est” Eye. (it is considered) “ because that judgment is ever given by the court upon due consideration had of the record before them: and in every judgment there ought to be three persons, actor, reus and judex.” We have said this much of the nature of actions and judgments, and the forms thereof, because, as is well said by Coke (on Litt. fol» 168 a,) they conduce much to the right understanding of the law and the reason thereof, especially in this particular case. The principles laid down by Cok© have been resorted to, and acknowledged in many adjudications, of which we will select the following, as *600 more pertinent to this case. In Rex vs. Hearle, Strange 625-8, the King’s Bench allowed the return to a. mandamus, and on error in Parliament, it was adjudged that error did not lie, and the writ was therefore quashed. In Rex vs. Dean and Chap, of Dublin, it appears that the King’s Bench of Ireland, had awarded a peremptory mandamus, to which a writ of error was brought in the King’s Bench of England, and it was there adjudged that the tvrit did not lie, wherefore it was quashed, and upon a writ of error in Parliament the judgment of King’s Bench of England was affirmed with costs. The decision upon the writ of error in the King’s Bench was given upon great deliberation, the arguments of the bar and the bench reflect much light upon this case, and we recommend them to the profession as containing the true reasons why writs of error have never been sustained on writs of mandamus procedendo, habeas corpus., and upon contempts.
The material grounds of the decision are, that a writ of error is calculated to restore the party to somewhat that is lost; but the mandamus gives no right to the person in whose favor it was awarded, and the reversal would give no right to the plaintiff in error; that a writ of error only lies on what is properly a judgment, which that was not; that the award of a peremptory mandamus, or the allowance of a return to the alternative mandamus, is but an entry, not w ith the “ consideratum est lastly, the great inconveniences that would follow, if cases of mandamus should be hungup by writs of error.
The proceedings for contempts, are not in their nature actions. There is no actor, claiming a realty or personalty or the mixed, whose right or demand is to ba affirmed or concluded by the event. The person offending is not to be for ever concluded of any right. There is not the presence of the three persons constituting a judgment ; the award of punishment is made upon no consideration of a record before the court, it is but an order or rule upon the person; and the entry is without an “ ideo consideratum est.” Not, indeed, that the absence of that characteristic where it should be, or the presence of it where it should not be, can withhold or give the writ of error ; but that the court ought to look ipto the nature of the demand or proceedings, and thence determine the proper form of the entry. But what if *601 this order should be reversed ? The reversal would signify nothing. The party cannot be restored to what he lost bv the execution of the order. Although Coke says that a writ of error may not always imply a restitution of either a realty or personalty, yet the case put by him, of a writ of error to reverse a judgment of outlawry in a civil action, shews the extent to which this exception is meant. The writ of error in such case is prosecuted against the plaintiff in the action below, in whose favor, however, nothing has been adjudged ; because no judgment could be given by reason of the default; and therefore, as between plaintiff and defendant, no right has been concluded. But by the judgment of outlawry, the rights and civil capacities of the person outlawed were restrained, and his goods and chattels forfeited to the king; and by reversal of the outlawry, the party is restored to his rights and capacities, as well as his property, as the necessary, though collateral consequence of such reversal, the king being no party to the writ of error. The courts of England have exercised the power of punishing contempts from, time immemorial: many punishments have been inflicted which were of great consequence to the offenders ; and if it had ever been imagined that a writ of error would lie, we should in all probability have read of it in such cases. On the contrary, Fortescue, justice, in the case of the King vs. the Dean and Chap. of Dublin, Str. 540, argues against the writ of error to the award of the mandamus, because the disobedience of such order is but a contempt. “ Entries,” says he, “ are made of contempts, and yet I believe error was never brought.”
The cases of Clay and of Allen, formerly decided in this court, and cited by the counsel of Johnston, do not notice this preliminary question ; and it was then entirely overlooked, as we are informed by one of the judges who sat in those cases.
The inconveniences which might result from sustaining writs of error and appeals from orders for punishing contempts, are worthy of great consideration. We ought indeed to weigh well the consequences, before we give a deliberate sanction to a procedure never once recorded in the juridical annals, from the earliest periodf down to the present day, except in the two cases jusi *602 mentioned. The great purposes for which courts aré entrusted with the power of punishing contempts, demand a speedy and summary proceeding, not consisting with the delays consequent upon writs of error or appeals. If free from the apprehension of immediate punishment, the contemptuous witness, in the face of the court, and in the very act of trial, might paralize the hand of justice by refusing to give evidence. The poison would circulate through every artery of the judicial system. In fact, the rights, liberties and property of the whole community are immediately involved and interested in the support of the constituted authorities. What are laws without the means competent to enforce and secure a due obedience ? To this end, a power ill courts of justice to suppress contempts and disobedience to their authority, by immediate punishment, is essentially necessary, and results from the very first principles of judicial establishments. Laws are necessary to the good order of society, courts are ordained by the laws as necessary for their due administration j hence, due respect for the courts of justice is as essentially necessary as a regard for the laws themselves. For when once such respect is lost among the people, the authority of the court is at an end. And that court is impotent and contemptible indeed, whose power to punish a contempt to its authority depends upon the discretion of a superior. But if a writ of error will lie, an appeal will also lie, where the punishment should be accompanied with a fine amounting to one hundred dollars : and judgments above, or amounting to one hundred dollars, may be appealed from as a matter of right at the prayer of the party. Thus the enormity of the offence would arm the offender with the weapon of delay. It seems to be an established principle of law, that one court cannot punish for a contempt committed against another court. Intimately related to this, is another sentiment, that one court cannot judge of a contempt committed against another. In fine, it seems necessary to the very existence of a court in the healthy exercise of its powers, that it should have exclusive jurisdiction to judge of contempts to its authority.
But-it may perhaps be asked, if each court is suffered to exercise the power of punishing contempts, without the control and revision of any other court, where is the *603 security of the citizen against the arbitrary oppression of the judge, by a wilful infraction of the law ? It is answered, that the citizen finds security in his own correct demeanor, in the great lenity and unwillingness, which has generally been remarked in courts, to resort to this exercise of their powers ; but above all, in that responsibility which the judge owes to the assembled representation of the country, for any corrupt, or wilful and arbitrary abuse of his powers. It is the boast of our government, that no, officer, however exalted his station may be, is above the law, neither can he indulge a wild, arbitrary,, or licentious disposition, without.responsibility.
Government cannot be administered without committing powers in trust and confidence ; the exercise of power now complained of, is one which, it seems to, us, each court must necessarily exercise — free and independent of this court — subject, however, to that responsibility which we ourselves owe to the country. It is therefore considered by the court that the writ of error be quashed.