## WHITTEM *v*. THE STATE.

APPEAL.—*Jurisdiction of Courts.*—The power and jurisdiction of the courts of this State are fixed and determined by the law of their creation, and the right to appeal from an inferior court to the Supreme Court is prescribed by the code. The right to appeal confers on the Supreme Court the power to review the judgment appealed from, if the appeal has been perfected according to law and the rules of court.

PROCEEDING FOR CONTEMPT.—*Criminal Law.—Appeal.*—A proceeding for contempt is a criminal proceeding, and our statute gives an appeal to the Supreme Court from all final judgments in criminal cases, and this right of appeal includes judgments in proceedings for contempt.

SAME.—*Appeal.—Stay of Proceedings.*—This right of appeal does not deprive inferior courts of the power to inflict immediate and summary punishment for contempt; for being a criminal proceeding, an appeal will not stay or supersede the judgment.

SAME.—*Power to Punish for Contempt.*—The power to punish for contempt is conferred upon the courts of this State by statute, and the language of the statute embraces both direct and constructive contempts.

CONTEMPT.—*Direct Contempt.*—A contempt is direct when committed before and in the presence of the court, or so near to the court as to interrupt the pro-

ceedings thereof; and such contempts are usually punished in a summary manner, without evidence, but upon view and personal knowledge of the presiding judge.

SAME.— *Constructive Contempt.*— Contempts are constructive, when they are committed, not in the presence of the court, and tend by their operation to interrupt, obstruct, embarrass, or prevent the due administration of justice.

SAME.—*Practice.*—The proceeding against a party for a constructive contempt must be commenced by either a rule to show cause, or by an attachment; and such rule should not be made, or attachment issued, unless an affidavit is filed specifying the acts committed by the person accused of the contempt.

SAME.—*Practice.*—*Trial.*—When the rule or attachment has been served, the person accused has the right to be heard by himself and counsel. If the contempt is admitted, the court may render judgment on such admission, but if the defendant denies that he committed the acts complained of, or insists that they do not constitute a contempt, the court should hear the evidence, and determine the guilt or innocence of the party.

PARTIES.—*Next Friend.*—The *next friend* who prosecutes for an infant cannot be regarded as a party to the suit; the infant is the party.

SAME.—*Seduction.*—An infant female who by her next friend institutes an action for her own seduction is the plaintiff in the cause, and may or may not, as seems best to her, attend court and prosecute the suit.

SAME.—*Contempt.*—If the defendant in such suit by threats or intimidation induces the plaintiff to leave court, or abducts her against her will, he will be guilty of a contempt of court; but if she goes away of her own free will and accord, without persuasion or coercion on the part of the defendant, the fact that he, at her own request, aids and assists her to get away, will not make him guilty of contempt.

WITNESS.—*Practice.*—There is no law or practice that will authorize a party to have himself or herself subpœnaed as a witness to testify in his or her own behalf, and thus acquire the rights and protection that are afforded to witnesses.

CONTEMPT.—*Release from Imprisonment.*—If a defendant, while imprisoned on a charge of having abducted the plaintiff, files affidavits conclusively showing that there has been no abduction and no contempt, it is error to refuse to set aside the judgment and admit him to bail.

SAME.—*Imprisonment.*—The imprisonment for contempt must be for a certain and definite time, or must expire on the performance of a condition.

SAME.—*Cases Overruled.*—The case of *The State* v. *Tipton*, 1 Blackf. 166, and subsequent cases holding that an appeal will not lie in cases of contempt, are upon that point overruled.

APPEAL from the Jefferson Circuit Court.

BUSKIRK, J.—There was pending in the Jefferson Circuit Court, at the October term, 1871, an action wherein Emily I. Risk, by her next friend, Emeline Risk, was plaintiff, and the appellant was defendant, in which the plaintiff sought to

recover damages for her alleged seduction by the defendant in that action, and the appellant in this appeal. On the 26th day of October, 1871, that being the 10th judicial day of said term, the attorneys for the plaintiff verbally alleged, in open court, that they were credibly informed that the plaintiff, Emily I. Risk had been abducted by the defendant, and informed the court that the said plaintiff had been duly subpœnaed by reading, on the part of the plaintiff, to attend and testify in said court, for and on behalf of the plaintiff, and against the defendant; and the said attorneys verbally moved the court for a writ of attachment against the defendant. The plaintiff was then called in open court, and failing to appear, an attachment was issued for the said plaintiff, to bring her body into court as a witness for the plaintiff, and for contempt of court, in not obeying the said process. The said attachment was placed in the hands of the sheriff, who afterward returned the same with an indorsement thereon, that the said Emily I. Risk could not be found. We are next informed by the record, that it was stated she was abducted on Monday, October 23d, 1871, but it fails to show by whom the statement was made, or upon what information.

Thereupon a writ of attachment was issued against the appellant, on which he was arrested and brought into court to answer for a contempt of court in said matter. The defendant then entered into a recognizance, with William Spencer as his surety, in the sum of one hundred dollars, conditioned for his appearance from day to day to answer for the said contempt.

On the same day the court proceeded to hear the testimony of the witnesses in relation to the alleged contempt of the said defendant.

From the testimony it appears that Emily I. Risk, Emeline Risk, her mother, and next friend in said action, and Greenberry Hays, her uncle, had gone to the city of Madison to attend court as witnesses in the said action for seduction, and were stopping with William Black, in the lower part of the city; that defendant went to the house of Mr.

Black on Monday evening about dusk and inquired for Mr. Black, and being informed that he was not at home, had left; that soon after the defendant had left, the said Emily I. Risk disappeared from the house; that soon afterward the defendant and some other man, who was unknown, were seen standing by a fence a short distance from the house of Mr. Black; that they stood still until Emily I. Risk came up to them when they took her by the arms and they started off together; that Emily had no money and no clothing except what she had on her person; that Emily was a weak-minded girl, and could only see with one eye; that the defendant had his hat drawn down over his eyes, which partially concealed his face.

There was no evidence that any coercion or force was used by the defendant, except taking hold of the arm of the said Emily; nor did it appear that the said Emily made any resistance or outcry.

After the evidence was closed, the court informed the counsel of the appellant that they would be heard as to whether he was guilty of contempt, but they declined to offer any evidence or make any argument. The matter was then adjourned until the next morning, when the court, of its own motion, required the defendant to be sworn, and to testify in reference to the said contempt, but the defendant refused to testify, and claimed the protection of the court, and his privilege on the ground that his testimony would tend to furnish evidence to convict him of a crime. The court decided that the defendant would not be required to testify.

The court then rendered the following finding and judgment, namely:

"Comes now the defendant, and the court, after hearing the evidence introduced, finds the defendant guilty of a contempt of this court; and further finds that he be imprisoned in the county jail of this county until the body of Emily I. Risk be produced in court, and until the costs herein are paid or replevied, unless sooner discharged by the court.

It is, therefore, considered by the court that the defendant is guilty of a contempt of this court; that he stand committed to the county jail of this county until the body of Emily I. Risk be produced in this court, and until the costs of this attachment are paid or replevied, unless sooner discharged by the court."

To this judgment proper exceptions were taken, presented by a bill of exceptions. The court thereupon ordered the sheriff to commit the defendant to the jail, which was done without any warrant of commitment.

After the defendant had been committed to jail, his counsel moved the court that he might be heard in his defense, which motion was overruled, and an exception was taken. The defendant's counsel then moved the court to discharge the defendant from jail, on the grounds that, by law, he was not liable to imprisonment, and that he was guilty of no contempt, which motion was overruled and an exception taken.

On the eighteenth judicial day of the said term of said court, the defendant, by his counsel, filed the affidavits of himself and Emily I. Risk, and upon said affidavits moved the court to admit the said defendant to bail and to give him the opportunity to comply with the order of the said court, and purge his supposed contempt, which motion was overruled and an exception was taken.

The affidavit of the said Emily I. Risk was, in substance, the following:

"That she was the same Emily I. Risk who was the relatrix in a bastardy suit which had been pending in the Ripley Common Pleas; that the defendant in said proceeding, William Whittem, had made suitable provision for the support of her bastard child, and that she had gone into said court and dismissed the same; that she was the same Emily I. Risk who was the plaintiff in an action then pending in the Jefferson Circuit Court against the said William Whittem to recover damages for her seduction by the said defendant; that in the settlement of the said proceedings in bastardy it was

agreed and understood, and constituted a part of the consideration of the said compromise, that the said defendant was to pay her the reasonable fees of her attorneys, and she was to release her action for her seduction and dismiss the said suit; that she intended to have dismissed the said action, but was prevented from so doing by her uncle, Greenberry Hays; that she had seen the defendant at her house on Sunday, the 22d of October, 1871, when she informed him that she had not been subpœnaed as a witness, that she did not want to attend court; that she wanted to go away; that she requested him to take her away, and told him that if he could not do so before, to wait until she went to court, and that he must then find out where she was staying and come there for her; that in pursuance of this arrangement, the defendant came to Black's house on Monday evening, just at dark; that she went out to meet him in the road, when he sent back after his buggy; and when it came they got in and drove to North Madison, and from there she had gone to Columbus on Tuesday morning; that in all this the defendant was acting at her request, as she did not want to attend court; that she left Madison of her own free will and accord, and for the sole reason that she did not wish to go on with the trial, and she was afraid that her uncle, Mr. Hays, would compel her to go on with it; that she had stayed away for said cause; that she was not then, and never had been, under any coercion or restraint by Mr. Whittem or any other person, except Mr. Hays; that she did not want to prosecute the said suit, as she regarded the whole matter settled; that the said Whittem had not, by word or act, frightened or intimidated her, nor persuaded her to go away; and that she was working by the week for people in Columbus who knew nothing of the matter."

The affidavit of the defendant was, in substance, the same, the only difference being that he detailed the matter with more minuteness and greater accuracy.

We are confronted at the threshold of this investigation with the questions of whether the appellant had a right of

appeal, and whether this court has the jurisdiction to review the finding and judgment of the court below.

The power and jurisdiction of the courts in this State are fixed and determined by the laws of their creation, and the right to appeal from an inferior court to this court is provided by the code. The right to appeal confers on this court the power to review the judgment appealed from, if the appeal has been perfected according to law and the rules of this court.

Section 550 of the code (2 G. & H. 269) gives the right of appeal in civil actions, and reads as follows:

"Sec. 550. Writs of error are hereby abolished. Appeals may be taken from the courts of common pleas and the circuit courts, to the Supreme Court, by either party, from all final judgments, except in actions originating before a justice of the peace, or mayor of a city, where the amount in controversy, exclusive of interest and costs, does not exceed ten dollars. The party obtaining judgment shall not take an appeal after receiving any money paid or collected thereon."

The right of appeal in criminal cases is given by section 148 of the criminal code, 2 G. & H. 425, and is in these words:

"Sec. 148. An appeal to the Supreme Court may be taken by the defendant, as a matter of right, from any judgment against him, and upon the appeal, any decision of the court or intermediate order made in the progress of the case may be reviewed."

It has been adjudged by this court that the word judgment, as used in the above section, has reference to final judgments alone. *Miller* v. *The State*, 8 Ind. 325; *Reese* v. *The State*, 8 Ind. 416.

Was the proceeding under consideration a civil or criminal action? or did it so far partake of the nature of either that it is to be governed by the principles of law and rules of practice applicable to either of those actions? That it was not a civil action is too plain to admit of a doubt, or to justify a reference to authorities. The criminal law of this

State is entirely statutory, and not of common law origin. *Beal* v. *The State*, 15 Ind. 378. This is not, strictly speaking, a criminal action; for such a charge must either be presented by indictment or information. The record discloses the fact that this proceeding is in the name of the State of Indiana against William Whittem, charging him with a contempt of court; and a final judgment was rendered by which he was imprisoned in the jail of the county for an uncertain and indefinite period of time.

The case of *Crook* v. *The People*, 16 Ill. 534, was a proceeding against Crook and others for contempt, in disobeying an injunction, and the court held that it was not, strictly speaking, a criminal action, because no indictment had been found by the grand jury; but it was called a criminal prosecution for contempt; and while the court declined to decide whether an appeal could be taken in an information for contempt, it was held that the answer of the party charged with contempt could be controverted, and the fact alleged in excuse might be disproved.

In *Pitt* v. *Davison*, 37 N. Y. 235, the court held that there was a distinction between proceedings to punish for criminal contempts, and proceedings as for contempts to enforce civil remedies, and that in the former cases personal notification of the accusation was necessary.

The Supreme Court of the United States, in *Ex parte Kearney*, 7 Wheat. 38, which was an application for a *habeas corpus* to bring up the body of John T. Kearney, then in jail, upon the order and judgment of the Circuit Court of the District of Columbia, for contempt of court in refusing to testify as a witness, held, that that court had no jurisdiction of the case, for the reason that it had no appellate jurisdiction of criminal cases, and, that being a criminal charge, no right of appeal existed. The court say:

" If this were an application for a *habeas corpus*, after judgment on an indictment for an offence within the jurisdiction of the circuit court, it could hardly be maintained that this court could revise such a judgment, or the proceedings

which led to it, or set it aside and discharge the prisoner. There is, in principle, no distinction between that case and the present; for when a court commits a party for a contempt, their adjudication is a conviction, and their commitment, in consequence, is execution."

Lord Chief Justice DE GREY, in *Brass Crosby, Lord Mayor of London*, 3 Wils. 188, said: "When the House of Commons adjudged any thing to be a contempt, or a breach of a privilege, their adjudication is a conviction, and their commitment, in consequence, is execution; and no court can discharge, on bail, a person that is in execution by the judgment of any other court."

In our opinion, these authorities demonstrate that a proceeding for contempt is in the nature of a criminal prosecution. The results and consequences are the same in the one proceeding as in the other. In both the party convicted may be deprived of his liberty and confined in jail, and subjected to the payment of a fine.

As has been shown, our statute gives an appeal to this court from all final judgments.

A judgment has been defined to be the "decision or sentence of the law given by a court of justice or other competent tribunal, as the result of proceedings instituted therein for the redress of an injury." Bouv. Law Dic.; Tidd's Prac. 930; 3 Bl. Com. 395 and 396.

The difference between an interlocutory and final judgment may be well illustrated by this proceeding. The court ordered an attachment for the defendant, and had him brought into court to answer to the charge of contempt. That was an initiatory step, and no appeal could have been taken; and if the court had ordered the defendant to be confined in jail until the charge of contempt could have been heard, that would have been an interlocutory judgment from which no appeal would lie. But when the court had heard the evidence and adjudged the defendant to be guilty of a contempt of court, and sentenced him to confinement in the county jail until he produced in court the body of Emily I.

Risk, and paid the costs of the proceedings, such decision became and was a final judgment.

We are well aware that there is a long and an almost unbroken line of decisions in this court, holding that an appeal would not lie from the judgment of an inferior court in a proceeding for contempt. The first case, and the one upon which all the others depend, is the case of *The State* v. *Tipton*, 1 Blackf. 166, which was an attachment against Tipton for contempt, in failing, as a sheriff, to execute a *capias ad satisfaciendum*. The court say:

"It is the opinion of this court, that in these cases we have no jurisdiction. Courts of record have exclusive control over charges for contempt; and their conviction or acquittal is final and conclusive. This great power is entrusted to these tribunals of justice, for the support and preservation of their respectability and independence; it has existed from the earliest period to which the annals of jurisprudence extend; and except in a few cases of party violence, it has been sanctioned and established by the experience of ages. *Lord Mayor of London's Case*, 3 Wils. 188, opinion of KENT, C. J., in the case of *Yates*, 4 Johns. 317; *Johnston* v. *The Commonwealth*, 1 Bibb, 598."

The case of *The Lord Mayor of London, supra*, was not in point, for two reasons; first, that was a proceeding by *habeas corpus*, and there being a judgment of conviction by a competent tribunal, the court could not, in a collateral proceeding, inquire into the legality of the imprisonment; second, the Lord Mayor of London had been convicted and imprisoned by the House of Commons, which possessed judicial power, and there being no court superior to Parliament, the court of King's Bench had no jurisdiction on appeal or by writ of error.

The opinions of Lord Chief Justice DE GREY and Justices GOULD and BLACKSTONE show the grounds upon which the judgment of the court was based. Lord DE GREY says: "All contempts are either punishable in the court contemned, or in some higher court; now the Parliament has no supe-

rior court, therefore the contempts against either house can only be punished by themselves." Again: "When the House of Commons adjudge anything to be a contempt, or a breach of privilege, their adjudication is a conviction, and their commitment, in consequence, is execution; and the court cannot discharge or bail a person that is in execution by the judgment of any other court. The House of Commons, therefore, having an authority to commit, and that commitment being an execution, the question is, what can this court do? It can do nothing when a person is in execution by the judgment of a court having competent jurisdiction; in such case, this is not a court of appeal."

The case of *The State* v. *Tipton* was not a collateral proceeding by *habeas corpus*, but was a direct proceeding by appeal from an inferior to a superior court, and therefore differed in every essential feature from the case of the Lord Mayor of London, and besides was for the contempt of the court by an officer of that court, in refusing to serve the process of said court, while in the latter case the contempt was against the House of Commons, for a breach of the privileges of the House, and that House possessed paramount and superior power over the courts of England.

The next authority referred to and relied upon was the opinion of Mr. Chief Justice KENT, in the matter of *Yates*, 4 Johns. 317, where Yates had been imprisoned by the court of chancery for malpractice as a master in chancery. The proceeding was by *habeas corpus*. Yates was discharged by Judge Spencer of the Supreme Court, and was afterward re-arrested and re-imprisoned by the chancellor, and the case was appealed to the Supreme Court, which court reversed the order of Judge Spencer in discharging him. The case was then appealed to the court of errors, where the opinion of the Supreme Court was reversed, and the opinion of Judge Spencer was affirmed. See *Ex parte Yates*, 6 Johns. 337. Instead of this case being an authority in support of the ruling of this court, it is in direct opposition to it, as are

many other decisions in that State, as will appear in a subsequent part of this opinion.

The next and last case relied upon by this court is that of *Johnston* v. *The Commonwealth*, 1 Bibb, 598, where the court held that no writ of error or appeal lies to an order punishing for contempt. The facts of the case are so imperfectly stated that it is almost impossible to tell the character of the contempt. The only statement is the following: "Ordered, that Gabriel J. Johnson, Esq., be sent to jail for the space of six hours, for a contempt of court." We infer that the contempt was committed in the presence of the court, and that no rule was entered to show cause, or attachment issued, or evidence heard. But the opinion in that case has been very materially modified in the case of *Bickley* v. *The Commonwealth*, 2 J. J. Marsh. 572, where the court say: "We conceive, in cases of contempt, the appellate court has authority to correct erroneous judgments and sentences, although it can not retry the question of contempt or no contempt. Suppose, for instance, a circuit court should inflict a fine of five hundred dollars for a contempt, without the intervention of a jury, when the statute limits the fine to ten pounds, might not this court rectify the error? We see no objection to doing it."

It is quite clear to us that two of the cases upon which the opinion in *The State* v. *Tipton* was based have been overruled or so modified that they have ceased to be authority, and that the other case was not in point. In such a case, ought not the opinion founded upon such cases be overruled, and especially when the whole current of modern decisions is in favor of the right of appeal and review?

The following cases sustain the right of appeal in cases of contempt: *Commonwealth* v. *Newton*, 1 Grant (Penn.), 453; *Ex parte Rowe*, 7 Cal. 175; *Ex parte Langdon*, 25 Vt. 680; *Regina* v. *Paty*, 2 Ld. Raym. 1106, 1115; Coke on Lit. 288; *Bickley* v. *Commonwealth*, 2 J. J. Marsh. 572; *Stuart* v. *People*, 3 Scam. 395; *Vertner* v. *Martin*, 10 Smede & Mar. 103; *Baltimore & Ohio R. R. Co.* v. *City of Wheeling*, 13 Grat. 40;

*Ex parte Yates,* 6 Johns. 337; *M'Credie* v. *Senior,* 4 Paige, 387; *The People* v. *Craft,* 7 Paige, 325; *Albany City Bank* v. *Schermerhorn,* 9 Paige, 372; *The People* v. *Farman,* 2 Am. Law Rev. 353; *The People* v. *Hackley,* 24 N. Y. 74; *Pitt* v. *Davison,* 37 N. Y. 235; *Vilas* v. *Burton,* 4 Am. Law Reg. 168; *In re Hummell,* 9 Watts, 416.

The most of the above cases held that a person who has been adjudged guilty of contempt by a competent court, and imprisoned, cannot be discharged upon a writ of *habeas corpus.*

WOODWARD, J., in *Commonwealth* v. *Newton, supra,* says: "There is no ground to doubt our jurisdiction in this case, because this is a proceeding for contempt, which is a substantive criminal offense, and of which we take cognizance on *certiorari* or writ of error, in the same manner and to the same extent we do of any other public offense, for which the courts subject to our appellate jurisdiction assume to punish a citizen. Our jurisdiction results out of the constitution of this court. It is not self-imposed, but is forced upon us by the legislative imposition of powers and duties under which we sit, and is one of the securities of the liberty of the citizen. The courts having a limited jurisdiction in contempts, every fact found by them is to be taken as true, and every intendment is to be made in favor of the record, if it appears to us that they proceeded within and did not exceed their jurisdiction; but for the purpose of seeing that their jurisdiction has not been transcended, and that their proceedings, as they appear of record, have been according to law, we possess and are bound to exercise a supervisory power over the courts of the commonwealth."

In *The People* v. *Hackley,* the court held that where it appears by return on *habeas corpus,* that the commitment was a contempt, plainly and specially charged in the commitment, ordered by a court of competent jurisdiction, he shall be remanded into the custody in which he was found. The court, however, say:

"But this rule is of course subject to the qualification, that

the conduct charged as constituting the contempt must be such that some degree of delinquency or misbehavior can be predicated of it; for if the act be plainly indifferent or meritorious, or if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so."

It is said by the Supreme Court of California, *supra*, "The main difficultly in reference to the right of this court to review such decision arose under the four hundred and ninety-third section of the practice act, which provides that 'the judgment and orders of the court or judge in cases of contempt shall be final and conclusive.'

"This language of the statute would at first view seem to be very express, and conclusive. But in arriving at the true intention of the law, we must look to all portions relating to the same matter, and also the general drift and spirit of our system. The framers of our constitution intended to produce an entire system, harmonious and efficient in all its features. The same rights were intended to be secured to all. The same judicial construction of the law was equally contemplated. For this purpose our Supreme Court is created by the constitution.

"If then, in a certain class of cases, deeply affecting the liberty of the citizen, even to the extent of perpetual imprisonment, the Supreme Court cannot review the decisions of inferior courts, it would leave our judicial system without unity and efficiency, and make the liberty of the citizen virtually subject to the discordant decisions of all the county and district courts of the State."

The Supreme Court of Pennsylvania, in the case of *Hummel*, 9 Watts, 430, say: "If this be so in civil proceedings, there is a still stronger reason why the proceedings of an inferior tribunal for a contempt of court should be subject to the revisory power of this court, to see that they have not overstepped their jurisdiction, and exercised this summary power in a case not warranted by the law. For this is always

ranked as a criminal proceeding, and the general common law rule is, that a *certiorari* lies from the king's bench to remove all criminal proceedings of an inferior court, unless there be a special exemption, or unless where, after conviction, the party is put to his writ of error."

In *Stuart* v. *The People*, 3 Scam. 395, the Supreme Court of Illinois say:

"Contempts are either direct, such as are offered to the court while sitting as such, and in its presence, or constructive, being offered, not in its presence, but tending, by their operation, to obstruct and embarrass, or prevent, the due administration of justice. Into this vortex of constructive contempts have been drawn, by the British courts, many acts which have no tendency to obstruct the administration of justice, but rather to wound the feelings or offend the personal dignity of the judge, and fines imposed, and imprisonment denounced, so frequently, and with so little question, as to have ripened, in the estimation of many, into a common law principle; and it is urged, that inasmuch as the common law is in force here, by legislative enactment, this principle is also in force. But we have said, in several cases, that such portions only of the common law as are applicable to our institutions and suited to the genius of our people, can be regarded as in force. It has been modified by the prevalence of free principles and the general improvement of society; and while we admire it as a system, having no blind devotion for its errors and defects, we cannot but hope that in the progress of time it will receive many more improvements, and be relieved from most of its blemishes. Constitutional provisions are much safer guarantees for civil liberty and personal rights than those of the common law, however much they may be said to protect them."

In our opinion it is fully and completely demonstrated by the foregoing authorities, that a proceeding for contempt is a criminal proceeding, and our statute, in plain and express language, gives an appeal to this court from all final judgments in criminal cases; and we are, therefore, of the opin-

ion that the appellant in the case under consideration had a right of appeal, and that this right of appeal confers on this court jurisdiction to examine and review the judgment of the court below.

In coming to this conclusion we have not been unmindful of the consequences that are likely to result. We admit to the fullest extent that the power to commit or fine for contempt is essential to the existence of every court. Business cannot be conducted unless the court can suppress disturbances and preserve the respect due to the dignity of the court, and the principal means of doing that is by immediate punishment. It is a case that does not admit of delay, and the court would be without dignity that did not punish it promptly and without trial.

Where the contempt is committed in the presence of the court, and the court acts upon view and without trial, and inflicts the punishment, there will be no charge, no plea, no issue, and no trial; and the record that shows the punishment will also show the offense, and the fact that the court had found the party guilty of the contempt; on appeal to this court, any fact found by the court below would be taken as true, and every intendment would be made in favor of the action of the court. The members of this court do, and must, have as strong motives and as earnest a desire to preserve the power and dignity of the judiciary, and protect the courts from insult and molestation, as the circuit, common pleas, and criminal judges can possibly have. Besides, the right of appeal does not deprive the inferior courts of the power to inflict immediate and summary punishment for any contempt, for the reason that being a criminal proceeding, an appeal will not stay or supersede the judgment of the lower court, and such judgment will remain in full force until reversed by this court.

When the contempt is not committed in the presence of the court, the proceeding must be commenced either by a rule to show cause or by attachment, and the party accused will have the right to be heard in his defense; and the evi-

dence offered on the trial, and all the other steps, can be put upon the record by a bill of exceptions, and the questions involved can be fairly presented to this court for examination and review, and thus enable this court to determine whether the acts committed amounted to a contempt, and whether the lower court had exceeded its jurisdiction in the punishment inflicted.

Having arrived at the conclusion that we possess jurisdiction to review the judgment of the court below, it remains for us to determine whether the conduct of the appellant constituted a contempt of court, and whether the court acted within or exceeded its jurisdiction in the judgment rendered. The power to punish for contempt is, by plain and undoubted language, conferred upon the courts of this State by statute. Section 13 of the act providing for the organization of circuit courts provides, that "the said circuit courts, respectively, shall have full authority to administer all necessary oaths, and to punish, by fine and imprisonment, or either, all contempts of their authority and process in any matter before them, or by which the proceedings of the court, or the due course of justice, is interrupted." 2 G. & H. 8.

By section 28 of the act providing for the organization of the common pleas, the same power is conferred upon such courts. 2 G. & H. 26.

The above section embraces both direct and constructive contempts. The contempt is direct when committed before and in the presence of or so near to the court as to interrupt the proceedings of the court. The refusal of a witness to testify, the insolence and insubordination of an attorney or other officer of court; fighting, making a noise or confusion in or so near to the court as to interrupt the business of court, may be mentioned as some of the acts that amount to a direct contempt of the court; and such contempts are usually punished in a summary manner, without evidence, but upon the view and personal knowledge of the presiding judge.

Contempts are constructive when they are committed not

in the presence of the court, and when they tend, by their operation, to interrupt, obstruct, embarrass, or prevent the due administration of justice. The refusal of a witness or juror to obey the process of the court; the refusal of a citizen, when lawfully called upon by an officer, to assist in executing a warrant or other lawful process; the refusal of a person, against whom an officer has a warrant, to submit to an arrest, or the escape of such person after arrest; the attempt on the part of third persons to prevent an arrest or to procure an escape; any attempt to bribe, intimidate, or otherwise influence a juror; any attempt to threaten or intimidate a person from instituting or defending any action; to counsel, advise, or persuade a witness or juror not to attend court when lawfully summoned; to threaten, intimidate, persuade, or bribe, or offer to bribe any witness to testify to anything that is not true, or to suppress or withhold the truth; the forcible abduction of a witness or party with the view or for the purpose of preventing such witness from testifying in any cause pending in any court, to prevent such party from prosecuting or defending any action pending in any court, may be mentioned as some of the cases of constructive contempts.

The proceeding against a party for a constructive contempt must be commenced by either a rule to show cause, or by an attachment, and such rule should not be made or attachment issued, unless upon affidavit specifically making the charge. When the rule or attachment has been served, the person accused has the right to be heard by himself and counsel. If the contempt is admitted, the court may render judgment on such admission; but if the defendant denies that he committed the acts complained of, or insists that they do not constitute a contempt, then the court should hear the evidence, and upon that determine the guilt or innocence of the party.

The decision of the question of whether the appellant was guilty of a contempt will mainly depend upon the legal *status* of Emily I. Risk, in reference to the case that was pending

in the Jefferson Circuit Court, wherein she, by her next friend, was plaintiff, and the appellant was defendant.

First. Was she the real party, and did she have the right to control the action? or was Emeline Risk, the next friend, the real party, and did she have the right to control the action?

At common law, an infant could neither sue nor defend except by guardian. By the statutes of West. 1, 3 Edw. I., ch. 49; and West. 2, 13 Edw. I., ch. 15, he is authorized to sue by *prochein ami.*

Sections 10 and 11 of our code provide as follows:

"Sec. 10. When an infant shall have a right of action, such infant shall be entitled to maintain suit thereon, and the same shall not be delayed or deferred on account of such infant not being of full age."

"Sec. 11. Before any process shall be issued in the name of an infant, who is a sole plaintiff, a competent and responsible person shall consent in writing to appear, as the next friend of such infant, and such next friend shall be responsible for the costs of such action, and thereupon process shall issue as in other cases; but where it shall appear to the court that such next friend is incompetent, or irresponsible, the court may remove him, and permit some suitable person to be substituted, without prejudice to the progress of the action." 2 G. & H. 42 and 43.

Section 24 of the code (2 G. & H. 55) provides, that "any unmarried female may prosecute as plaintiff an action for her own seduction, and may recover therein such damages as may be assessed in her favor."

The law is thus stated by Tyler in his valuable book on Infancy and Coverture, p. 192: "An action by an infant must be prosecuted by guardian or *prochein ami,* but always in the name of the infant; and the suit is the infant's to all intents, the same as though he was of full age." Again: "Although the action is prosecuted by a *prochein ami,* or guardian, the *prochein ami,* or guardian, cannot be considered a

party to the suit. *Sinclair* v. *Sinclair*, 13 Mees. & Wels. 640, 646; *Brown* v. *Hull*, 16 Vt. 673."

Our statute and the above authority make the infant the party. The *prochein ami* is made, by statute, liable for the costs of the action. It is held by this court, in *Develin* v. *Riggsbee*, 4 Ind. 464, that an infant female might release a right of action for a breach of promise of marriage.

It was held by this court, in *Gavin* v. *Burton*, 8 Ind. 69, that an infant father of a bastard child might settle and compromise with the mother, and thus make provision for the support of such child. It was held by this court, in *Gimbel* v. *Smidth*, 7 Ind. 627, that an infant female might compromise and release a right of action for her own seduction, but that she could not release her mother's right of action for the seduction of her daughter, the mother being a widow.

It is quite obvious to us that Emily I. Risk was the plaintiff in said action, and that she might or might not, as seemed best to her, attend court and prosecute the action.

Under our statute, she was a competent witness in her own behalf, and the defendant could have made her his witness, and could have had her subpœnaed and forced her attendance by attachment; but we know of no law, written or unwritten, or any practice of court, that would authorize a party to have himself or herself subpœnaed as a witness to testify in his or her own favor, and thus confer upon such person the rights and protection that are afforded to witnesses. The appellant could not, therefore, be adjudged guilty of a contempt of court in obstructing its process, or in abducting a witness.

We must, therefore, regard Miss Risk as the plaintiff in said cause. If the appellant induced her by threats or intimidations to leave court, or abducted her against her will and consent, he was guilty of a flagrant contempt of court; but, if, on the other hand, she went away of her own free will and accord, and without any persuasion or coercion on his part, the fact that he aided and assisted her, at her own request, to get away, would not make him guilty of any contempt.

Whittem v. The State.

We do not think that the evidence on the trial showed that Miss Risk had been abducted. The appellant went to the house where she was staying and inquired for Mr. Black, and being told that he was not home, he left. She voluntarily left the house and went down to where the appellant and his friend were standing, and got into the buggy and went off with appellant. It is true that one witness testified that the two men took her by the arms and walked with her, but there was no evidence of any resistance or outcry on her part, as there would have been if she was being taken away by force, and against her will.

We are of the opinion that the court erred in finding the appellant guilty of contempt on the evidence. We are also of the opinion that the court erred in refusing the application of the appellant to set aside the judgment and admit him to bail. The affidavits of Miss Risk and the appellant conclusively showed there had been no abduction and no contempt.

We are also of the opinion that, conceding that the appellant had been guilty of a contempt, the judgment of the court was erroneous. The imprisonment was to continue until he produced in court the body of Emily I. Risk, and paid the costs, unless sooner discharged. There was nothing to show that she was under his power, or that he could comply with the order of the court. The imprisonment for contempt must be for a certain and definite time, or must expire on the performance of a condition. The court, by its adjournment and imprisonment of the appellant, rendered it impossible for him to produce in court the body of Miss Risk until the next term of the court. Besides, the costs were not ascertained and taxed so that they could be paid, and he discharged. *Albany City Bank* v. *Schermerhorn.* 9 Paige, 372. An imprisonment by a legislative body terminates with the adjournment. *Anderson* v. *Dunn,* 6 Wheat. 204; PIRTLE, Chancellor, in *Ex parte Alexander,* 2 Am. Law Reg. 44, says:

" Is it necessary that the courts in this country should have power to commit until further order of the court? I

cannot find it. I can see no call for it. I can see danger in it; and the law should not make danger where there is no necessity. A freeman should never, by the laws of freemen, be placed in such dreary uncertainty of imprisonment as that when he inquires of the 'law of the land,' it cannot tell him when it shall end. No absolute power lives in this country. It cannot exist in a republic. Suppose the court should adjourn without having made any further order, the consideration of the case is cut off at once and entirely until the next term. So he must be left without any authority of the judiciary even to mediate his case. And a person committed for contempt cannot be bailed."

There is another objection to the proceedings in this case. When the contempt is direct, the court acts upon view; but if it is constructive, this cannot be done. The attachment was issued upon the verbal statement of counsel, and of some person whose name is not given. This was wrong. The court should never enter a rule to show cause or order an attachment, until an affidavit of some responsible person was filed, specifying the acts committed by the person accused of the contempt.

The case of *The State* v. *Tipton*, 1 Blackf. 166, and all subsequent cases that hold that an appeal will not lie to this court in cases of contempt, are upon that point overruled.

The judgment of the court below is in all things reversed, and the cause is remanded with directions to the court below to discharge the defendant from imprisonment and from further proceedings under the said charge.

*H. W. Harrington* and *C. A. Korbly*, for appellant.

*B. W. Hanna*, Attorney General, for the State.