GEORGE S. GILMAN AND OTHERS *vs.* EDWIN C. BASSETT AND OTHERS.

By the provisions of law the power to provide school-houses or rooms, and to employ and dismiss teachers, is *primarily* in the school district; if the district neglect or refuse to act, the committee are authorized to provide rooms and employ teachers at the expense of the district.

But if the district acts in respect to them, its action is conclusive; and the committee must conform to its action.

Therefore where a teacher, without the action of the district, was discharged by the committee, and the district, at a special meeting warned for that purpose, directed the committee to reinstate her, and the committee refused to comply with the direction or resign; it was held, first, that it was the duty of the committee to obey or resign; and second, that a mandamus would lie to compel such obedience.

APPLICATION, by a special committee of the South School District of the town of Hartford, for a mandamus against the respondents, the regular committee of the district, to compel them to replace in one of the schools of the district a teacher who had been removed by them. The following facts were found by the superior court.

On or about the first day of September, 1865, the district, by its committee, Hugh Harbison, Samuel Dodd and Horace Lord, employed Miss E. A. Parsons as a teacher, to take charge of the second department of the Main street branch school, so called, within the district and one of the schools of the district, for the term of one school year, then just commencing, and she entered upon her duties in the school. On

the 29th day of September the district at its annual meeting made choice of Edwin C. Bassett, Hawley Kellogg, and William Delaney, the present respondents, as the district committee for the year ensuing, and they accepted the office, and on the 30th day of September entered upon their official duties. There were at this time five schools in the district, taught by twenty-four teachers.

About this time some of the patrons of the school complained to the chairman of the committee of the course pur_sued by Miss Parsons in opening her school with religious exercises, although such exercises were according to the regulations of the board of school visitors. For that reason many of the pupils had left the school, so that it was thinly attended, and thereupon the respondents, on the 3rd day of October, 1865, informed Miss Parsons that she was obnoxious to many of the parents of the children in that department, and proposed to her to take the position of assistant teacher in the third or primary department in the branch school, temporarily, until a vacancy should occur in the Wadsworth street school, when they would transfer her to that school, and pay her the same wages she had been previously receiving. She promised to consult her friends and reply to this proposition in a few days. On the 4th of October she pre_sented to the board of school visitors a written complaint, making charges with regard to the conduct of the Rev. Mr. Lynch, who had interfered personally in her management of the school. Two days after this the committee called upon her for her decision as to the proposition submitted by them. She informed them that she had preferred charges against Mr. Lynch, and that she should have nothing further to say on the subject till those charges had been investigated. She refused to have anything further to do with the committee, whereupon they discharged her and put another teacher in her place, who now fills the position, and Miss Parsons can not be re-instated except by displacing the present incumbent.

Afterwards, on the 26th day of October, the committee, on being requested so to do by the requisite number of voters of the district, called a meeting of the legal voters of the district

to be held on the 3rd day of November, 1865, which meeting was legally held on that day and the following vote passed thereat :

" *Resolved,* That the action of our present school committee in displacing Miss Parsons from the room and position she has held and appointing her to another of a lower grade, manifestly in conformity with the wishes of Rev. Mr. Lynch, and because she conducted the religious exercises of her department in accordance with the rules established by the board of school visitors, is hereby disapproved ; and the committee is therefore instructed to re-instate Miss Parsons in her former position immediately, and to pay her the salary agreed upon by the former committee for the current year."

And thereupon the relators were appointed a special committee, charged with the duty of taking, and fully authorized to take, any legal measures they deemed necessary or expedient for the purpose of carrying out promptly the decision of the district as above expressed. The relators then requested the respondents to re-instate Miss Parsons in obedience to the wishes of the district, but they refused and ever since have refused so to do, although fully advised of the action of said district.

The relators reside in the district and are tax-payers therein. There was a feeling against Miss Parsons on the part of those who patronized her school, arising from the religious exercises at the opening of the school, whereby the number of scholars had become considerably reduced, and her usefulness as a teacher in that room was greatly impaired. Under these circumstances the committee had reason to believe and did believe that the interests of the school required a change of teachers. The school is now in successful operation under a competent teacher, who is satisfactory to the patrons of the school. Miss Parsons is conceded to be a faithful and competent teacher. The school district, by a subsequent vote at a meeting legally warned for that purpose, discontinued the Main street branch school, to take effect at the close of the winter erm, which expires April 1st, 1866.

Upon these facts the case was reserved by the superior court for the advice of this court.

*Welch* and *Robinson,* for the plaintiffs.

1. The removal of Miss Parsons by the committee during the term of her employment as teacher was an unlawful act. The district committee had no power of amotion under any circumstances.   1st. No such power is conferred by statute, whence all their power is derived.   Revision of 1866, p. 340, sec. 84 ; *City of New London* v. *Brainard,* 22 Conn., 552 ; *Scofield* v. *Eighth School District,* 27 id., 504 ; *Webster* v. *Harwinton,* 32 id., 131.   2d. It is against public policy to vest in the same persons the power of appointment and amotion, as appears from all our legislative statutes ancient and modern. 3d. The presumption of any such power in the committee is excluded by the fact that practically this power is conferred upon school visitors.   Revision of 1866, p. 344, secs. 104 to 109.

2. Admitting even that the committee may remove a teacher, it can only be done for cause, and no cause existed in this case.   The only causes which can justify a removal are defined in the statute.   1st. Miss Parsons was certified and employed, was competent and faithful, and was removed against her will, while in the discharge of her duty under a contract binding upon the committee.   *Silver* v. *Cummings,* 7 Wend., 181 ; *School District in Natick* v. *Morse,* 8 Cush., 191.   2d. There was nothing in the circumstances or condition of the school which warranted the degrading or dismissal of Miss Parsons.   The alleged grievances were wholly chargeable to the laws of the school, and Miss Parsons' compliance therewith and the consequences of such compliance can not be visited in judgment upon her.   Even if their grievances were attributable to Miss Parsons' lack of judgment and skill this would not justify her removal.   *Paul* v. *School District,* 28 Verm., 575.

3. The removal of Miss Parsons for the reason which induced it was an attempt to override and nullify the reasona-

ble and lawful rules of the school. It was also contrary to the laws and policy of the state.

4. The removal of Miss Parsons was not only contrary to the law but in violation of the rights of the district. The district under the contract with Miss Parsons had a right to her services and to her moral influence in the school.

5. The remedy sought is the appropriate and the only remedy. *The King* v. *Barker*, 1 W. Black., 300, 352 ; *S. C.*, 3 Burr., 1267, 1269 ; *Fuller* v. *Plainfield Academic School*, 6 Conn., 532 ; *Treat* v. *Middletown*, 8 id., 246 ; *Sleeper* v. *The Franklin Lyceum*, 7 R. Isl., 523, 531 ; *The People* v. *Board of Police*, 35 Barb., 537 ; *Commonwealth of Kentucky* v. *Dennison*, 24 Howard, 97 ; Tapping on Mandamus, 12, 13, 178, 254 ; *State* v. *Common Council of Watertown*, 9 Wis., 254.

6. The court is asked, not simply to vindicate an abstract right, but to redress a great public and private wrong, and to rebuke an act committed and persisted in, in violation of law, in contempt of the authority of the district, and in defiance of the moral sense of the community.

*Waldo* and *McManus*, for the respondents.

1. The writ of mandamus is a prerogative writ, introduced to prevent disorder from a failure of justice and a defect of police. *Rex* v. *Barker*, 3 Burr., 1267. Hosmer, Ch. J., in *American Asylum* v. *Phœnix Bank*, 4 Conn., 178, says :— " The writ of mandamus lies to enforce the execution of an act when otherwise justice would be obstructed, and regularly issues only in cases relating to the public and government." Judge Williams in *Treat* v. *Middletown*, 8 Conn., 246, says :—" The common law has provided this writ to prevent a failure of justice, where there is no established specific remedy, and where in justice and good government there ought to be one." "It can not be granted to give an easier and more expeditious remedy, but only where there is no other remedy being both legal and specific." Tapping on Mandamus, 18. It will lie only in cases which concern the public, and not where they are merely of a private nature. 1

Swift Dig., 564. See also 3 Bla. Com., 110 ; *Burr* v. *Norton*, 25 Conn., 103 ; *Baker* v. *Johnson*, 41 Maine, 20.

2. The remedy by mandamus is discretionary. *American Asylum* v. *Phœnix Bank*, 4 Conn., 178 ; *Colt* v. *Roberts*, 28 id., 330 ; *Chase* v. *Blackstone Canal Co.*, 10 Pick., 246.

3. There is no allegation in the pending application for this writ, nor is there any fact found by the court, tending to show that the course of justice has been obstructed or any right of the relators impaired.

4. The issuing of this writ can be of no benefit to the district, and will be a positive injury to the school in question.

5. This application seems to be based on the idea that district committees are merely the agents of districts, and subject in all respects to their control. But this is not so. The district can not say they will have no committee. If they neglect to appoint a district committee the school visitors will appoint one, and when appointed the committee are officers of the law with certain powers conferred and duties imposed on them by law. In the exercise of their powers and the performance of their duties they must exercise a reasonable discretion, like other public officers. When they have exercised a reasonable discretion their action is not liable to revision in this way. Tapping on Mandamus, 13 ; *Chase* v. *Blackstone Canal Co.*, 10 Pick., 246. The employment of teachers when not otherwise directed by the district is one of the duties imposed upon them.

6. The district have by their own act rendered this writ of no practical benefit. They have discontinued this school after April 1st, 1866. That time is close at hand, and the court will not, in the exercise of its discretion, do an act which must be of no practical effect.

BUTLER, J. This is an application by a special committee of the south school district of Hartford, asking on behalf of said district a peremptory mandamus to compel the stated district committee to carry into effect a vote of the district directing that committee to re-instate a teacher whom they have removed from the charge of a particular school. The

superior court on request of the applicants issued an alternative mandamus, requiring the stated committee to comply with the vote of the district or show reasons why a peremptory mandamus should not issue, and that committee still refusing to comply, appeared in court and set forth their reasons in a return. The facts so set up were traversed, and on a hearing the court found the facts, and reserved the questions arising thereon for our advice. The argument has taken an extended range, but the case turns on the question whether it was competent for the district to direct the act to be done, and the consequent duty of the committee to do it.

It is not necessary or desirable that we should consider or discuss the question whether the committee acted properly or wisely in removing the teacher from the school, or whether the district acted wisely in directing that she should be restored. It may be conceded that in the absence of any direction by the district, the committee might remove if they thought the interest of the school required a removal. Yet it must also be conceded that, if the district mistakenly thought the removal unwise or unjust, they might direct her restoration if the power to direct exists, and so the question is simply one of power in the district and duty of obedience on the part of the committee.

Had then the district a legal right to pass the vote, and if so could the committee lawfully refuse to obey it.

There can be no question in respect to the power of the district to pass the vote. The law constituted the district a corporation and imposed upon it the duty of establishing and maintaining the necessary schools within its limits. For that purpose all the necessary power is given. The district is required and expected to elect annually a district committee. If they neglect to do so, the board of visitors are authorized to appoint them, and if the district neglect to provide a teacher and rooms the committee are authorized to provide them, that a school may be kept and the education of the children secured. But such authority is given to the committee contingently, to be exercised only in the event that the district fail to exercise their power or do their duty. When

the district act, either in respect to teachers or rooms, their action is exclusive, and the committee are powerless. They can not over-ride the action of the district; and if that action is conformable to law, they should obey or resign, or show some legal excuse for their disobedience. If they fail to show such excuse, it is the duty of the court upon application to compel them to obey by mandamus.

In this case the committee come into court and allege several excuses.

In the first place, they allege that the writ of mandamus is a prerogative writ, and that the court can not issue it except to prevent disorder from a failure of justice and a defect of police; and that it regularly issues only in cases relating to the public and government, and where in justice and good government there ought to be one. Doubtless the writ was originally a prerogative one, but it has ceased to depend upon any prerogative power, and is now regarded in much the same light as ordinary process. And admitting the other propositions to be true, the case falls within them. Education in this state is a matter of public governmental concern, and has been such from its organization. This school district was created as a *public* territorial corporation, and the duty of providing for the education of the children within its limits is imposed on it by public statute law. And the committee were elected and their duties prescribed by force and direction of the same law. It is a clear case therefore for a mandamus, and a case where that is the only legal and specific remedy.

They allege, in the second place, that the interests of the school required the dismissal of the teacher, for that her conduct gave offence to the patrons of the school, and they took their children away. It is not necessary as we have said that we should examine the question whether the teacher or the committee or the district acted unwisely. The case does not necessarily involve those questions. The district, whose province it was (in the absence of action by the school visitors) to determine whether the teacher was properly dismissed or not, have determined it, and their decision upon the mere question of propriety was conclusive upon the committee.

V . XXXIII.        39

It sufficiently appears that the teacher was qualified, examined, legally employed, and kept the school in conformity to the regulations of the board of visitors, that the district have determined that her conduct was lawful and proper and directed the committee to re-instate her, and it is no excuse for the disobedience of the committee that they thought a compliance would not comport with the best interests of the school.

The third reason assigned is that the school will be discontinued on the 1st of April by vote of the district. That fact may be a reason why the relators should not insist upon a mandamus, but it is no reason why they are not entitled to it if they do so insist.

There is no other reason alleged or found true which is material, and the superior court must be advised to issue a peremptory mandamus.

In this opinion the other judges concurred.