MORRIS TYLER AND OTHERS *vs.* WILLLIAM HAMERSLEY, STATE'S ATTORNEY.

An adjudication of contempt by a court of competent jurisdiction, where the proceeding is according to the common law practice, is final, and can not be reviewed by a court of error.

But when the question of contempt is tried upon an issue of law tendered by the party moving in the proceeding, and decided upon such issue, the decision must be regarded as a judgment upon which a writ of error may be brought.

A writ of error, though operating in ordinary cases as a supersedeas of execution from the date of its service, does not have that effect in the case of a peremptory mandamus.

Especially does it not have that effect where the errors assigned have already been before the court upon a reservation of the case for advice and have been passed upon by the court.

WRIT OF ERROR from a judgment of the Superior Court adjudging the plaintiffs in error guilty of contempt and ordering them imprisoned.

The petition to the Superior Court for the order for the commitment of the plaintiffs in error was made by William Hamersley, Esq., the defendant in error, as Attorney for the State for the county of Hartford, and set forth the refusal of the respondents, who were directors of the New Haven & Northampton Company, a railroad corporation, to obey a writ of peremptory mandamus issued by that court, requiring the company to stop its passenger and freight trains at the village of Plantsville. The facts with regard to the matter are fully stated in the report of the case of *The New Haven & Northampton Company* v. *The State of Connecticut,* next preceding, and in that of the case of the *State of Connecticut* v. *The New Haven & Northampton Company,* 43 Conn. R., 351.

To the petition for their commitment the respondents made the following answer:

And now the respondents for answer to the foregoing application say, that they admit and aver that this court, upon the 19th day of May, 1876, in a proceeding brought to the present term of this court, rendered judgment that a peremptory mandamus issue, and that thereupon a peremptory

mandamus did issue from this court, as is alleged in said application, but they deny that the same was ever legally served upon the secretary of said company, because they say that immediately after the same had been signed and issued and placed in the hands of the sheriff for service, and before the said sheriff had served or commenced to serve the same, the corporation defendant in said action had in due form of law caused to be issued a writ of error upon said judgment so rendered in said action, returnable to the next term of the Supreme Court of Errors in this state for the first judicial district, which writ of error was, before the said sheriff had served or commenced to serve said writ of peremptory mandamus, actually served upon the defendant in error therein and the plaintiff in said action of mandamus, and the said sheriff then and there had full notice of said issuance and service of said writ of error. And these respondents aver that by operation of law the said issuance and service of said writ of error as aforesaid, operated as a stay and supersedeas of said writ of peremptory mandamus, and the same thereupon became null and void and of no effect, and that it thereby became the duty of said sheriff to proceed no further in the service of the same, but the respondents allege that the said sheriff, his said duty in the premises not regarding, did, upon said 19th day of May, and after the issuance and service of said writ of error as aforesaid, leave a copy of said writ of peremptory mandamus with the secretary of said company as aforesaid. And the respondents further allege, that immediately upon the receipt of the said paper by the said secretary, they, being desirous of performing their legal duty in the premises, held a directors' meeting, and caused their legal counsel to be inquired of as to the legal duty of these respondents in the premises, and received from their said counsel certain opinions hereinafter referred to, and the said respondents as directors, in reliance upon the authority of said opinions, passed a vote to accept and act upon the advice so given.* And they further say that, relying upon

---

* The opinion of the counsel of the railroad company annexed to the answer

Tyler *v.* Hamersley.

said opinions, they have not caused any trains to stop at the said Plantsville station, as stated in said application, but they aver that in so doing they have not been guilty of any intentional contempt of this court, or had any desire or intention to disobey any legal orders of this court, but believing from the said opinions of their counsel, upon whose knowledge of the law and of the duty of the respondents under these circumstances they have wholly relied, that said writ of peremptory mandamus was superseded, and that there was no legal duty or obligation imposed upon them by the leaving of said

of the respondents, was as follows:

HARTFORD, CONN., May 20th, 1876.

In the matter of the service of a mandamus upon the New Haven & Northampton Company, to stop its trains at Plantsville.

I am asked to give my opinion as to whether the peremptory mandamus issued by the Superior Court on the 19th day of May, commanding the company to stop its trains at Plantsville, and which was served on the secretary of the company about two o'clock on that day, was, when so served, a valid precept, which the company was bound to obey. The facts to my own knowledge are these:

The court at Hartford, about eleven o'clock on the 19th instant, gave judgment that a peremptory mandamus issue, and immediately thereupon such a mandamus was signed by the clerk and delivered to the sheriff, with instructions to serve the same upon the secretary of the company. Within five minutes thereafter a writ of error in the cause was duly issued and signed, and was delivered to the sheriff before he left the court room, with instructions to serve it upon the defendant in error, Mr. William Hamersley, the State Attorney, which the sheriff immediately did. The writ of error was therefore issued and served before the sheriff had commenced the service of the mandamus.

Upon these facts I am of the opinion that this writ of error by its issuing and service was a supersedeas of the process of mandamus so issued and in the hands of the sheriff, that that process became thereupon invalid and of no effect, and that it was the duty of the sheriff to proceed no further in serving it, in accordance with the principles laid down in *Dutton* v. *Tracy*, 4th Conn. Reports, 365, and many other cases. It is I believe universally held that service of a writ of error made before service of a final process, is a stay and supersedeas of that process.

Under this view of the law I do not hesitate to give it as my opinion that the mandamus when so served by the officer upon the secretary of the company had been legally superseded, and was a void process, that the act of the officer in serving it was illegal and invalid, and that the pretended service imposed no duty whatever upon the company or its officers.

We concur in the above.

CHAS. E. PERKINS.

R. D. HUBBARD,
JNO. S. BEACH,
GEO. H. WATROUS,
H. B. HARRISON.

copy with the said secretary of said company, and for no other reason or reasons whatever, they have not stopped said trains at Plantsville as aforesaid. Wherefore they pray that they may be hence dismissed.

To this answer the Attorney for the State demurred, and prayed that an attachment might issue.

The court (*Granger, J.,*) held the answer insufficient, and made an order " that the respondents and each of them be attached of their bodies, and that they and each of them be therefor committed to the county jail in the town of Hartford in said Hartford County, and be therein confined and imprisoned till discharged by order of this court, or otherwise by due process of law, and pay the costs of this petition and the proceedings therefor; and that unless the said above-named officers and directors shall, forthwith and within twenty days after the day on which notice of this order shall be served on them or any of them, obey said peremptory mandamus, and make return of the same to this court, process to that end be duly issued by the clerk of this court against each of said officers and directors."

From this judgment the present writ of error was taken, the assignment of error being the holding that the writ of error referred to in the respondents' answer was not a supersedeas of the writ of peremptory mandamus.

*G. H. Watrous* and *C. E. Perkins*, for the plaintiffs in error.

1. Does a writ of error lie from the judgment of the Superior Court in a proceeding for contempt like the one at bar ?

A proceeding for contempt is either a civil or a criminal proceeding. If it is a civil proceeding, being a judgment of the Superior Court, a writ of error lies under the statute, for the reasons referred to in our argument in the case of *The New Haven & Northampton Co.* v. *The State.* It is unnecessary to go over again all the points and authorities there presented. But we most confidently submit that a proceeding for punishment of a contempt of court is not a civil but a criminal proceeding, and in such case section 16th of Gen. Statutes, p. 539, gives the defendant the same right to a writ

of error as in civil proceedings.   Contempts may properly be divided into two classes.   First, where they consist of acts done in the presence and within the actual knowledge of the court.   In such cases there are no proceedings, no notice is required, but the matter being within the actual knowledge of the court, it issues its warrant and has it executed at once. *Ex parte Bradley*, 7 Wall., 373.   In such cases, although a writ of error would probably lie, yet it would not be a supersedeas, because, it not being possible to bring and serve one before the process of commitment in contempt was executed, it would come under a well-settled rule that a writ of error issuing after execution executed is not a supersedeas.   But it is entirely unnecessary to consider this class of cases.   The proceedings in them are summary, intended only to protect the person of the judge or the actual administration of justice, and may or may not be different from such cases as the case at bar.   The second class of cases are those like the present, not proceedings to punish acts done in the presence of the court, but really in the nature of process to enforce the orders of the court.   They generally arise in cases of injunction, and it often depends on nice questions both of law and of fact, whether there has in fact been a violation of or refusal to comply with an order of court.   Here is a distinct and independent proceeding, consisting of a petition duly issued, an order of notice issuing from the court, duly served and returned, an answer filed by the respondents, to which a demurrer was filed, and a hearing had, on which the court *adjudges* that the answer is insufficient, and that the defendants have been guilty of contempt, and it is further *adjudged* that the defendants be imprisoned, and that process to that end issue.   Can there be any doubt that this is a *judgment* of the Superior Court in a separate and independent action, either civil or criminal?   *Ex parte Langdon*, 25 Verm., 683; *Hill* v. *Rogers*, 2 Iowa, 69.   It has been, we believe, uniformly held that these cases are *criminal prosecutions in fact*, though they may not be in form.   The question first arose in the Supreme Court of the United States, in *Ex parte Kearney*, 7 Wheat., 38.   That was an application to that court for

a writ of habeas corpus to bring up the body of a person imprisoned for contempt of the Circuit Court. The court refused to issue it, on the sole ground that the proceeding in contempt was a *criminal* proceeding, and that they had no power given to them to revise any criminal proceeding either by writ of error or habeas corpus, or in any other way. Story, J., says, (p. 43:) "When a court commits a party for a contempt, their adjudication is a *conviction*, and their commitment in consequence is execution, and so the law was settled upon full deliberation in *Lord Mayor of London's case*, 3 Wils., 188. This has ever since been considered as the leading case on the subject, and is approved everywhere. In *Commonwealth* v. *Newton*, 1 Grant's Cas., 453, the court says, in a proceeding to punish a contempt: "There is no ground to doubt our jurisdiction in this case, because this is a proceeding for contempt, *which is a substantive criminal offense*, and of which we take cognizance on *certiorari* or writ of error, in the same manner and to the same extent as we do of any other public offense." In *Whittem* v. *The State*, 36 Ind., 210, in a very full and thorough discussion of the question, the court says: "In our opinion it is fully and completely demonstrated by the foregoing authorities, that a proceeding for contempt *is a criminal proceeding*, and our statute in plain and express language gives an appeal to this court *from all final judgments in criminal cases*, and we are therefore of the opinion that the appellant had a right of appeal." See *Stuart* v. *The People*, 3 Scam., 395. There are very many cases where it has been held that writs of error lie in contempt proceedings. *Androscoggin & Kennebec R. R. Co.* v. *Androscoggin R. R. Co.*, 49 Maine, 401; *Hundhausen* v. *Marine Fire Ins. Co.*, 5 Heisk., 702; *Remley* v. *De Wall*, 41 Geo., 460; *People* v. *Simonson*, 9 Mich., 492; *Romeyn* v. *Caplis*, 17 id., 448; *Vertner* v. *Martin*, 10 Sm. & M., 103. All our statutes relating to contempt speak of it as a proceeding to "punish." Gen. Stats., p. 61, § 15; p. 476, § 2; *Rogers Man'f'g Co.* v. *Rogers*, 38 Conn., 123. There is special reason why a writ of error should lie in cases like the present. As is said by Spencer, J., in *Yates* v.

*The People*, 6 Johns., 406, which was a case of *habeas corpus* brought to test the validity of a commitment for contempt: "It appears to me to involve the highest absurdity to conceive that the framers of our constitution and our laws meant to erect this high tribunal to correct the errors of our highest court of judicature in civil cases, and to leave the still greater and more valuable rights of personal liberty unprovided for and unprotected by appeal to this high court, where in fact judgment has been given." But it is claimed that the power of a court to commit for contempts is absolute and unlimited, and will not be interfered with by any other court, and it is especially on this ground it is urged that a writ of error will not lie. But is this so? Do all citizens hold their liberty at the absolute disposal of any judge of any court, without redress or an opportunity of coming to this court to review that decision? No doubt this court will not review the *facts* found by the court below, but can it not say whether those facts constitute a contempt? In *People* v. *Hackley*, 24 N. York, 74 and 78, the court say: "As a general rule the propriety of a commitment for contempt is not examinable in any other court than the one by which is was awarded. But this rule is *of course* subject to the qualification that the conduct charged as constituting the contempt must be such that some degree of delinquency or misbehavior can be predicated of it, for if the act be plainly indifferent or meritorious, *or if it be only the assertion of the undoubted right of the party*, it will not become a criminal contempt by being adjudged to be so." Apply this principle to the case at bar. Assume that the defendants were correct in the view that the issuing of the writ of error in the mandamus case was a supersedeas, what an oppressive act it would be to imprison them because they did not obey a void and illegal process. What possible reason can be urged why this court should not have a revisory power over these questions? No doubt the power to commit for contempt is an indispensable power for courts, but it is not necessary that every inferior court in the land should have the final, absolute power to commit for everything they may please to call a contempt.

2. If a writ of error will lie in mandamus, is it a super-sedeas of final process if brought and served before such final process is served?

This question is one of great importance, and has never before been brought up in this state, though we believe that in practice a motion in error has always been a supersedeas; but upon the general principles applicable to all actions at law, we submit, most confidently, that there can be no doubt on this question.   Swift states the rule as follows, Vol. 1, p. 794: " When a writ of error is a supersedeas.   It is a rule that a writ of error after final judgment and before execution executed, is a *supersedeas* of the execution from the time of the service of the writ, or the time the party or officer has actual notice that the writ has been allowed and signed; and a proceeding after that time would be illegal."   In England the mere issuing of a writ of error before service of the process was a supersedeas.   2 Bac. Abr., 448; *Bishop of Ossory's case*, Cro. Jac., 534; *Jaques* v. *Nixon*, 1 T. R., 279; *Somerville* v. *White*, 5 East, 145; *Meriton* v. *Stevens*, Willes, 272.   In this state, and generally in the United States, it is held that the mere allowance of the writ of error is not of itself a supersedeas, but it is necessary that it be served upon the party or officer before the levy of final process is commenced; but if so served, it has invariably been held to be a supersedeas.   *Phelps* v. *Landon*, 2 Day, 370; *Dutton* v. *Tracy*, 4 Conn., 365; *Arnold* v. *Fuller's heirs*, 1 Ohio, 463; *Beatty's Adm'r* v. *Chapline*, 2 Har. & Johns., 7; *Blanchard* v. *Myers*, 9 Johns., 66; *McDonald* v. *Gifford*, 1 Brews., 280; *Board of Commissioners* v. *Gorman*, 19 Wall., 661.   In the United States courts the matter is somewhat modified by statutes, but they only lessen the common law effect.   In *United States* v. *Dashiel*, 3 Wall., 701, Mr. Justice Clifford says: " The effect of a writ of error under the 22d section of the judiciary act is substantially the same as the writ of error at common law."   And again: " Writs of error at common law, whether sued out by plaintiff or defendant, *operated in all cases as a supersedeas*."   In all these cases it is held that in actions at law a writ of error is a supersedeas, and

we believe that no case can be found where a different decision has been made. But we suppose that this general rule will not be contested by the defendant in error; but it will be claimed that a mandamus is an exceptional case, and that this general rule does not apply. If it be claimed that a mandamus is not an action at law, but an exceptional kind of action, outside of the common rules of law, we reply that in *State* v. *N. Haven & Northampton Co.*, 41 Conn., 137, PARK, C. J., says: "The writ of mandamus is one of the proceedings at common law." And in *Kentucky* v. *Dennison*, 24 How., 97, TANEY, C. J., says: "It is equally well settled that a mandamus in modern practice is nothing more than an action at law between the parties." See also High on Extr. Rem., 8. If it be claimed that a mandamus is a prerogative writ, and that therefore the usual rules do not apply to it, we reply that in *Gilman* v. *Bassett*, 33 Conn., 305, this court says: "Doubtless the writ was originally a prerogative one, but it has ceased to depend upon any prerogative power, *and is now regarded in much the same light as other process.*" See also *Kentucky* v. *Dennison*, supra. It is claimed that a writ of error is only a supersedeas of an *execution*, and that an execution is only a final process for the collection of money or possession of land under a judgment. But the text books and authorities all speak of an execution as a process for enforcing the judgment whatever it is. Herman on Executions, 2; Jacob's Law Dict. *Execution;* Bla. Com., 412; Burrell's Law Dict., *Execution; U. States* v. *Nourse*, 19 Pet., 28. We believe no definition can be found where the meaning of the word execution is confined only to cases where money or land is to be recovered. When, therefore, it is said that a writ of error is a stay of *execution*, it clearly means a stay *of the final process issued to execute the judgment.* If we examine the reason of the rule it will clearly appear that it applies to mandamus. The reason is that where a party has had a case decided against him in an inferior court, and has a right to go to a higher court to test the legality of that decision, it is an unjust thing to allow that judgment to be enforced before it is decided whether it

be legal or not. It is said that in England writs of error in cases of mandamus were not a supersedeas, but in England, under their peculiar proceedings, writs of error did not lie at all in cases of mandamus. It is also claimed that there are decisions to the effect that a writ of error is not a supersedeas in cases of mandamus. The only ones, we believe, that can be found on the subject are in New Jersey, New York, and South Carolina. In New Jersey no writs of error are allowed at all in such cases. *Layton* v. *The State*, 4 Dutch., 575. In New York the only case on the subject is *People* v. *Steele*, Edmonds' Sel. Cas., 505, where it was held that no writ of error would lie at all, and the question of supersedeas could not arise. In South Carolina the only case is *Pinckney* v. *Henegan*, 2 Strobh., 251. The court held that under their peculiar practice, which allowed *appeals*, (not writs of error,) from the decision of all questions, interlocutory as well as final, an appeal was not a stay. This was only applicable to their peculiar practice. But this question has directly arisen and been decided. In the case of *U. States* v. *Columbian Ins. Co.*, 2 Cranch C. C. R., 266, the question arose and was fully argued, and the court held that the writ of error was a supersedeas. The case was further reported in 7 Wheat., 534, and the Supreme Court then held that though a writ of error would lie, yet the amount in controversy was not sufficient to give them jurisdiction; but it was not even suggested that the writ of error was not a supersedeas. In *U. States* v. *Kendall*, 5 Cranch C. C. R., 278, the question again arose and was very fully argued, and the court again held that the writ of error was a supersedeas. The case went to the Supreme Court and is reported in 12 Peters, 524, where it was held that the writ of error would lie, but it was not claimed then that it was not a supersedeas. We believe these are the only cases to be found where this precise question has been decided. It is evident that it cannot often arise in the highest court, as it is an interlocutory question arising *after* the final judgment in the lower court, and one therefore upon which error would not lie. In other cases of a similar character a writ of error has always been held to

be a supersedeas.   In *Dutton* v. *Tracy*, 4 Conn., 365, it was held so in a case of forcible entry and detainer.   In *Board of Commissioners* v. *Gorman*, 19 Wall., 661, it was so held in a case of quo warranto.   It may be claimed that there would be cases where a writ of error was taken for purposes of delay, and it would be unreasonable to have it a supersedeas in such cases, but it is provided by statute that in such cases the Chief Justice may discharge the supersedeas at his discretion.   It is apparent, moreover, that there would be very many cases where it would be most unjust and injurious that a defendant should be obliged to obey a mandamus while a writ of error was pending.   Such process is often brought to obtain a delivery of moneys, bonds, notes, or other valuables, and as there can be no provision for any security for repayment if it should be afterwards held that the mandamus ought not to have issued, the defendant might lose the entire property.   High on Extr. Rem., §§ 338, 356.   The question however is not whether it is or is not desirable and proper that a writ of error should be a supersedeas in some or many cases of mandamus; it is a pure question of law whether it is or is not one in all cases.   If it is in any, it is in the case at bar; if it be not here, it is not in any case.   Much light may be thrown on the question, however, by the universal practice in this state.   In all the cases reported, and especially those in the 37th and 41st Conn., the motion in error has always been in fact a supersedeas.   We submit, therefore, that by law and by usage a writ of error in mandamus is a supersedeas, and that the decision of the Superior Court to the contrary is erroneous and should be reversed.

*W. Hamersley*, State's Attorney, and *J. R. Buck*, for defendant in error.

1. No writ of error lies to review the action of a court in ordering an attachment for contempt of court.

Attachments for contempt are of two kinds:—Criminal contempts, which may also be punished by indictment; and contempts committed by refusal or neglect to obey legal orders of the court made in the progress of a trial, and

which can not ordinarily be punished by indictment. *Andros-coggin & Kennebec R. R. Co.* v. *Androscoggin R. R. Co.*, 49 Maine, 401. The contempt in question is one of the latter kind. The power to punish such contempt is inherent in all courts, and of necessity is summary in its nature. At common law no writ of error lies to review a judgment or order punishing such contempt. *Lord Mayor of London's case,* 3 Wils., 188; *Yates* v. *The People,* 6 Johns., 406. And such must be the law of this state, unless altered by statute. Many cases cited from other states have no application here, because the right of review by appeal, writ of error, or *certiorari,* so often depends upon statutes, which vary in nearly every state. In some states the courts have no common law jurisdiction. In some, the power to punish for contempt is purely the creature of statute, regulated and limited by statute. In some, the powers of the appellate court, or court of errors, are defined by statute, or by the state constitution, in terms so broad as to leave no room for the operation of the common law. But in no state can a decision be found which holds that a writ of error lies to review the action of a court in enforcing obedience to its own orders, unless in pursuance of state legislation. The reasons commonly given for this rule of law are two: First, that a finding any one in contempt of court is in the nature of a conviction of crime, and no writ of error lies in criminal cases. This reason is rather an analogy than a reason. Second, and mainly, that the necessities of the case require each court to be the sole judge of contempts against itself; and the main object of vesting this power in courts, (to enable them to compel obedience to their lawful orders during the progress of a trial,) would be defeated, if a writ of error could be sued out each time it was exercised. *Ex parte Kearney,* 7 Wheat., 38; *Crook* v. *The People,* 16 Ill., 534; *In re Hummel,* 9 Watts, 416, 431; *Passmore Williamson's case,* 26 Penn. S. R., 9; *Vilas* v. *Burton,* 27 Verm., 56. In this state the rule of the common law has not been modified by any statute. The constitution provides that the powers and jurisdiction of the Supreme Court of Errors and Superior Court shall be defined by law. It has

always been held that the common law of the state is a part of the law defining these powers and jurisdiction. The power of the Superior Court to punish crimes at common law rests upon this construction. The statute allowing writs of error to be brought to the Supreme Court of Errors does not pretend to define the cases where such writs are proper. Gen. Stats., 449, 450. Error lies in those cases where it is allowed by the common law. The common law clearly providing for no writ of error in cases of commitment for contempt, and the power of commitment for contempt being derived in this state from the common law, and the legislature having never seen fit to alter the common law in this respect, it is plain that this writ of error was issued without authority of law. Our construction of the statute law is strengthened by the fact that the power of commitment for contempt can be exercised by a judge in vacation, and by the grand-jurors of a town in secret session. Of course in these cases no writ of error lies. It would be strange if the Superior Court had less power to enforce its orders than a judge in vacation or the grand-jurors of a town.

2. But if a writ of error would lie, it would not operate as a supersedeas of the writ of peremptory mandamus.

The nature of the writ forbids a different conclusion. Generally a writ of error, in ordinary actions at law, supersedes the judgment, as in the case of *Dutton* v. *Tracy*, 4 Conn., 365; but this is an extraordinary action—a rare remedy which the law gives when the ordinary action has become powerless. Rules applicable to ordinary actions at law do not apply to such exceptional remedies. The writ of peremptory mandamus was introduced into the English system of jurisprudence to prevent disorders from a *failure of justice*. The very word *peremptory* suggests something that must be done *speedily*. How does this accord with being subjected to a writ of error and dragged through the courts for years, as in the present case? Writs of error are optional with the parties bringing them. Now if a peremptory mandamus can be superseded at the option of the party against whom it is aimed, how can it prevent disorders from a failure of justice?

Under such a construction of the law the incumbent of any office held for one year could easily retain his place by filing a writ of error to a peremptory mandamus ordering him to yield his place to his successor. This would be a manifest wrong; yet this is the logical result of the construction of the law claimed by the plaintiffs in error. Where this remedy is used to right a wrong which *time* may carry past any power to right, can a writ of error stop its operation? Two other questions here suggest themselves: 1st. Is it in accordance with the letter and spirit of our law, that a party to a writ of peremptory mandamus may, at his own option, suspend its operation until it has ceased to be a remedy, although the writ of error fails? 2d. Is it in accordance with the letter and spirit of our law, that a party obtaining a writ of peremptory mandamus, may have it enforced, so that a writ of error can be of no avail as a remedy, although it is sustained by the higher courts? The answer to both of these questions is, that the court which issues the peremptory order will consider the nature of the case, and will not permit irreparable damage to be done either by issuing or refusing to issue the writ. It will consider all the circumstances and grant the proper relief. Even in an ordinary action at law a writ of error will not be a supersedeas if issued manifestly *for delay*. *Dutton* v. *Tracy*, 4 Conn., 365. This construction of the effect of a writ of error upon a peremptory mandamus has been sustained in several cases. In the case of *Pinckney* v. *Henegan*, 2 Strobh., 251, the court held that, although an appeal lies from an order of peremptory mandamus, yet it is no supersedeas. In the case of *People* v. *Steele*, 2 Barb., 554, (Edmonds' Select Cases, 505,) it was held that after a peremptory mandamus had issued, there was no power to stay the proceedings. It was also held in the case of *Wright* v. *Sharp*, 11 Mod., 175, that a bill of exceptions will not prevent the issuing of a peremptory mandamus. In Willcock's Law of Municipal Corporations, 446, it is said that neither a bill of exceptions nor a writ of error stays a peremptory mandamus. It is also held in the case of *The People* v. *Steele*, supra, that no writ of error would lie, and that

Tyler *v.* Hamersley.

if it would, it would not be a supersedeas. The case of
*U. States* v. *Columbian Ins. Co.*, 2 Cranch C. C. R., 266,
stands alone in holding that a writ of error supersedes a writ
of peremptory mandamus. But in that case the return of
the defendants was traversed. An analogy has been sug-
gested between these proceedings and criminal proceedings,
and it has been claimed that since a writ of error supersedes
a criminal judgment it would for the same reason supersede
this judgment. But it will be seen that there is no analogy
between the two cases. The party accused is *compelled* to
answer in contempt, but in criminal proceedings the party
accused cannot be compelled to answer. In a criminal pro-
ceeding no one can be found guilty, and judgment rendered,
except after a trial by jury. A proceeding for contempt is a
*civil* execution for the benefit of the injured party, carried on
*in the shape* of a criminal process. 4 Bla. Com., 285 ; 2 id.,
232. The process is on the criminal side of the court, for
the court's own protection. Common Pleas courts have only
civil jurisdiction, yet they can punish for contempt by an
arbitrary power given them in order to enforce their authority.
It does not follow that, because this proceeding is like a crim-
inal proceeding, it is therefore criminal. The case of *Chester*
v. *Conn. Valley R. R. Co.*, 41 Conn., 348, decided that the
decision of the railroad commissioners was *judicial in char-
acter*. But this court has held that that does not mean that
their decisions are *judicial*. Authorities to this point are
numerous. In *Peyton's Appeal*, 12 Kans., 405, the court
held that the proceedings of contempt were " quasi criminal."
In *Crook* v. *The People*, 16 Ill., 534, it was held that it was
" not, strictly speaking, a criminal action." In *Pitt* v. *Davi-
son*, 37 N. York, 235, it is held that a proceeding of this
character is a " civil contempt." In *Baltimore & Ohio R.
R. Co.* v. *Wheeling*, 13 Gratt., 57, it is held to be " in the
nature of a criminal offense." In *Stuart* v. *The People*, 3
Scam., 395, it is held to be " in the nature of a criminal pro-
ceeding." In *State* v. *Matthews*, 37 N. Hamp., 450, it is held
to be " of a criminal character." In the *Passmore William-
son case*, 26 Penn. S. R., 9, it was held to be a " special

criminal offense." In *Dunham* v. *The State*, 6 Iowa, 245, it is held that it is "not a criminal case." In *Haight* v. *Lusia*, 36 Wis., 355, it is held that the proceeding is "criminal in character."

Hovey, J. This writ of error is founded upon an adjudication of a contempt in refusing obedience to a peremptory writ of mandamus. The writ of mandamus was awarded and issued by the Superior Court sitting at Hartford, in accordance with advice given by this court, after a full hearing and argument, upon a reservation. It was directed to the New Haven & Northampton Company, a railroad corporation created by the laws of this state, of which the plaintiffs in error were directors and officers, and commanded them forthwith and thereafter to stop their regular passenger and freight trains at the dépôt at Plantsville on their railroad, for the purpose of receiving and discharging passengers and freight. Before it was served a writ of error was brought to this court to reverse the judgment by which the mandamus was awarded. The writ of mandamus was afterwards served upon the railroad corporation, and the plaintiffs were duly informed thereof, and also had due notice of the contents of the writ. But they refused to obey its mandate, on the ground that counsel had advised them that it was superseded by a writ of error. Proceedings were then had in the Superior Court against the plaintiffs in error to enforce their obedience to the writ of mandamus, and upon those proceedings they were adjudged guilty of contempt and ordered to be attached and committed to the county jail in Hartford, and to be confined and imprisoned therein till discharged by order of the court or otherwise by due process of law. It was also adjudged that they should pay the costs of the proceedings, and that unless they should forthwith and within twenty days after notice of the order was served upon them, obey the writ of mandamus and make return of the same to the court, process should issue against them. Notice having been served upon them, they brought the present writ of error to this court. And the defendant in error moves that it be struck from the docket.

Upon this motion the question which presents itself is, whether a writ of error will lie upon an adjudication of a contempt. Writs of error may, by statute, be brought to this court upon judgments of the Superior Court, and such writs, in all cases in which they will lie at common law, are writs of right, unless the questions raised by the assignments of error have been already determined by this court upon a reservation. But at common law no writ of error lies except upon a judgment or an award in the nature of a judgment. Co. Litt., 288; 2 Tidd, 1062. It was accordingly held in the case of the City of London, 8 Co., 288, that upon a return to a habeas corpus no issue could be joined or a demurrer taken and that no writ of error would lie thereon. In the case of *The King* v. *The Dean and Chapter of Trinity Chapel in Dublin*, 1 Stra., 536, (*S. C.*, 8 Mod., 27,) the doctrine of the case of the City of London was fully recognized. In the opinions given by the judges it was declared that error would not lie on the award of a procedendo or on the return of a rescue; and Fortescue, J., stated his belief that on a conviction for contempt error was never brought. In *Groenwelt* v. *Burwell*, 1 Salk., 144, (*S. C.*, 1 Ld. Raym., 454,) Lord Holt, who gave the opinion, admitted it to be good law that no writ of error would lie upon the award of a fine and imprisonment for a contempt. These cases are sufficient to show that at common law adjudications of contempts by courts of competent jurisdiction are final and cannot be reviewed in a court of error. And the doctrine is strongly supported by numerous other authorities, English and American. *Earl of Shaftsbury's case*, 2 St. Tri., 615; 1 Mod., 144; *The Queen* v. *Paty et al.*, 2 Ld. Raym., 1105; *The King* v. *Crosby*, 3 Wils., 188; *Carus Wilson's case*, 7 Ad. & El. N. S., (53 E. C. L.,) 984; *Ex parte Fernandez*, 10 Com. Bench, N. S., (100 E. C. L.,) 3; *S. C.*, 6 Hurlst. & Norm., 717; *Ex parte Pater*, 5 Best & Smith, (117 E. C. L.,) 299; *Ex parte Kearney*, 7 Wheat., 38; *State* v. *Towle*, 42 N. Hamp., 540; *Yates* v. *Lansing*, 9 Johns., 395; 4 id., 317; *In re Williamson*, 26 Penn. St., 9; *Ex parte Summers*, 5 Ired., 149; *State* v. *Woodfin*, id, 199; *State* v. *White*, T. U. P. Charlt., 123; *Gates* v.

*McDaniel,* 4 Stew. & Port., 69 ; *Moore* v. *Clerk of Jessamine,* Litt. Select Cas., 104 ; *State* v. *Tipton,* 1 Blackf., 166 ; *Kernodle* v. *Cason,* 25 Ind., 362 ; *Clark* v. *The People,* 1 Breese, 266 ; *State* v. *Mott,* 4 Jones Law, (N. C.,) 449 ; *Johnston* v. *Commonwealth,* 1 Bibb, 598 ; *Ex parte Adams,* 25 Miss., 883 ; *Martin's case,* 5 Yerg., 456 ; *Watson* v. *Williams,* 36 Miss., 331 ; *First Cong. Church* v. *Muscatine,* 2 Clarke, (Iowa,) 69. If, therefore, the petition for the attachment in this case had been proceeded with and the adjudication complained of by the plaintiffs in error had been made in the form and according to the rules of the common law, we should feel compelled to strike the case from the docket, because, by those rules, there would have been no judgment or award in the nature of a judgment upon which a writ of error would lie.   But the parties and the court proceeded with the petition as though it was an original suit, distinct from and independent of the proceedings upon which the peremptory mandamus was awarded, and accordingly, on the coming in of the return, the defendant in error formally demurred to the matters contained in it, and the court made the adjudication upon the demurrer.   In view of these circumstances, the counsel for the plaintiffs in error contended that the adjudication must be regarded and treated as a judgment, and that a writ of error lies upon it.   And the claim is strongly supported by a decision of the Supreme Court of Vermont.   *In re Jesse Cooper,* 32 Vt., 253.   That case arose upon a habeas corpus. Cooper, the relator, had been fined by a justice of the peace for a contempt in his presence while holding a court and had been committed to jail for non-payment of the fine.   He brought a habeas corpus before the county court to test the validity of his imprisonment.   The jailor made a return, to which the relator demurred ; and the county court decided that the imprisonment of the relator was not unlawful and remanded him.   The record was then brought before the Supreme Court for revision, and that court held that as the return was demurred to and issue joined upon the demurrer, the decision could be revised on habeas corpus.   The ground upon which this decision was made is indeed technical, but

it does not differ in that respect from the decision in the case of *The King* v. *The Dean and Chapter of Trinity Chapel in Dublin.* That case was twice argued before it was decided. Upon the first argument the judges were divided upon the question whether the award of a peremptory mandamus upon motion, and without pleadings or demurrer joined, was a judgment of which error could be predicated. The Chief Justice was in doubt about it. Fortescue, J., thought it hard to maintain that an award which did not contain the words " *ideo consideratum est*," was a judgment on which a writ of error would lie. Powis, J., seemed to be of the same opinion; and Eyre, J., thought that the award was a judgment on which error would lie because the writ recited that the return was held insufficient, *"per quod consideratum fuit, quod fierit breve de peremptorie mandamus, tam in complemento judicii quam in executione ejusdem."* On the second argument all the judges agreed, but for different reasons mostly technical, that a writ of error would not lie. It was, however, admitted that if the mandamus had been awarded upon an issue joined, either of law or of fact, the result would have been different. With such a precedent as that case furnishes, the decision *In re Jesse Cooper* cannot well be discarded because of the technical character of the reasons assigned for it by the court. And while I would not adopt it as a rule of procedure and thus open the way to this court for writs of error in cases of contempts generally, because, in general, every court must be allowed to judge of its own contempts ; yet where parties proceed as the parties proceeded in this case and try the question of contempt upon an issue of law tendered by the party moving in the proceeding, and the court decides the question upon that issue, the decision must be regarded and treated, not as an award merely, but as a judgment upon which a writ of error will lie. The motion to strike the case from the docket must, therefore, be denied.

This disposition of the motion of the defendant in error brings before us the proceedings in the court below and imposes upon us a delicate and important duty. In performing that duty the first question to be considered is, how are

the rights of the plaintiffs in error affected by the writ of error, and to what extent can the proceedings upon which the writ is founded be considered and reviewed in this court. The answer seems to me to be obvious. Brought here as this writ of error is by an unusual method of procedure and for the double purpose of staying execution and obtaining a revision of questions which are not ordinarily revisable in a court of error, it should give to the plaintiffs in error no right and secure to them no benefit or privilege to which they would not have been entitled, after commitment, upon a writ of habeas corpus. In the first place, the writ of error should not have the effect of staying execution upon the judgment. Should such an effect be given to it, parties guilty of the grossest and most aggravated contempts may set the courts at defiance, obstruct the regular course of justice, and suspend if not totally elude punishment at their own will and pleasure. Contempts are offences at common law against the court as an organ of public justice. The right of punishing them is inherent in all courts and is essential for their protection and existence. From their very nature the punishment, to be effectual, must be immediate and peremptory, and not subject to suspension at the mere will of the offender. Sentences for contempts would amount to nothing if the offenders could supersede them by writs of error, and the authority of courts would be contemptible indeed if it could be thus eluded and prostrated. 4 Bla. Comm., 286 ; 2 Sw. Dig., 358 ; *Ex parte Maulsby*, 13 Md., 625 ; *Ex parte Summers*, 5 Ired., 149 ; *Johnston* v. *Commonwealth*, 1 Bibb, 598.

In the second place, the proceedings upon which the judgment was rendered should not be reviewed except so far as may be necessary to determine whether the court in rendering the judgment acted within the sphere of its jurisdiction. Every court must of necessity possess the power to enforce obedience to its lawful orders and judgments, and punish contempts of all kinds against its authority. It is only when it acts without its jurisdiction that its proceedings in such cases will be interfered with or questioned by a superior tribunal. The principle upon which courts proceed in such cases is

clearly stated in the celebrated case of *Burdett* v. *Abbot*, 14 East, 1, 150, and the case of *The People* v. *Sturtevant*, 5 Seld., 263. In the former case Lord Ellenborough, in the course of an able and interesting opinion, observed that if a commitment appeared to be for a contempt of the House of Commons generally, he would neither in the case of that court or of any other superior court inquire further; but if it did not profess to commit for a contempt, but for some matter which could by no reasonable intendment be considered as a contempt of the court committing, but a ground of commitment palpably and evidently arbitrary, unjust and contrary to every principle of positive law or natural justice, he would look at it and act upon it as justice might require, from whatever court it might profess to have proceeded. In the case of *The People* v. *Sturtevant*, the rule laid down by the court was that " a party proceeded against for disobedience to an order or judgment is never allowed to allege as a defence for his misconduct that the court erred in its judgment. He must go further and make out that in point of law there was no order and no disobedience, by showing that the court had no right to judge between the parties on the subject."

The question then arises whether the proceedings in the court below were within the jurisdiction of that court. The record shows that before those proceedings were commenced a writ of error had been brought upon the judgment by which the writ of mandamus was awarded and was then pending in this court. And it was urged in argument by counsel for the plaintiffs in error that that writ of error was a supersedeas of the writ of mandamus and operated as a stay of all proceedings for the enforcement of that writ. If this claim is sustainable the court below had no jurisdiction of the proceedings in which the contempt was adjudicated, and its entire action, including the judgment rendered thereon, was *coram non judice* and therefore void. *Kendall* v. *Wilkinson*, 4 El. & Bl., 680. And it would follow as a necessary consequence that no obligation rested upon the plaintiffs in error or upon the corporation to which the writ of mandamus was directed, to stop their trains at Plantsville as the writ commanded;

and their refusal to obey the mandate was an innocent and a justifiable act.   But the claim is entirely without foundation. It is undoubtedly a rule of the common law, well settled and established, that a writ of error after final judgment and before execution executed is, in ordinary cases, a supersedeas of the execution from the time of its allowance, and by our law it is a supersedeas from the date of the service of the writ.   But it is no supersedeas of a peremptory mandamus. In the first place, no return to such a writ is allowed, the courts exacting implicit obedience to its mandate ; and such obedience is required during the entire period that the judgment by which it was awarded remains in force and unreversed.   High on Extr. Rem., § 567 ; *Kaye* v. *Kean*, 18 B. Monr., 839.   In the second place, the judicial decisions in England and in this country, generally, expressly hold that a writ of error does not operate as a supersedeas to stay the execution of a peremptory mandamus.   *Anonymous*, 1 Vent., 266 ; *Strode* v. *Palmer*, Trin. T., 2 Geo. I ; Lill. Ent., 248 ; *The Dean and Chapter of Trinity Chapel in Dublin* v. *Dowgatt*, 1 Peere Williams, 349 ; *Wright* v. *Sharpe*, 11 Mod., 175 ; *Lord Montague* v. *Dudman*, 2 Ves. Sr., 396 ; *The People* v. *Steele*, Edm. Sel. Cas., 505 ; 2 Barb., 554 ; *Pinckney* v. *Henegan*, 2 Strobh., 250.   But we do not choose to rest our decision of this question upon these grounds alone.   There is another reason which is perfectly conclusive in this case why the writ of error cannot be allowed to operate as a supersedeas.   A writ of error is never allowed to have that operation after the questions raised by the assignment of errors have been determined.   *Arnold* v. *Fuller*, 1 Ohio, 458 ; *Bishop of Ossory's case*, Cro. Jac., 534.   See also *Hartop* v. *Hislop*, 1 Ld. Raym., 97, 98.   In this case all the questions raised by the assignment of errors had been determined by this court upon a reservation by the Superior Court, before the writ of error was brought.   By the rules of this court that determination settled and established the law of the case and was final ; and the judgment which followed in the Superior Court was as conclusive and as binding upon the parties as if it had been rendered originally by the Superior Court and

afterwards affirmed on error by this court. *Smith* v. *Lewis*, 26 Conn., 110 ; *Nichols* v. *Bridgeport*, 27 id., 459 ; *Fowler* v. *Bishop*, 32 id., 199. The peremptory mandamus was, therefore, wholly unaffected by the writ of error and was in full force from the moment it was issued. The plaintiffs in error, as officers of the corporation to which the mandamus was directed, were bound to see that the mandate was obeyed. They chose a different course, and in so doing were guilty of a gross contempt of the authority of the court. The reasons assigned in their behalf furnish no excuse for their misconduct, and cannot under the circumstances be received in palliation of their contempt.

There is no error in the judgment complained of, and it is affirmed.

In this opinion CARPENTER, PARDEE and LOOMIS, Js., concurred.

PARK, C. J., dissenting. The writ of mandamus was originally a strictly prerogative writ, and issued only in certain clear and unquestionable cases. No pleadings were allowed and no judgment was rendered, and consequently no foundation was laid for a writ of error. But in modern practice the proceeding by mandamus has substantially lost its prerogative character. Pleadings are allowed, judgments are rendered, and writs of error are brought to try the validity of the judgments. In *Kentucky* v. *Dennison*, 24 Howard, 66, Chief Justice Taney says, "It is equally well settled that a mandamus in modern practice is nothing more than an action at law between the parties." In *Gilman* v. *Bassett*, 33 Conn., 298, Judge BUTLER says, "Doubtless the writ was originally a prerogative one, but it has ceased to depend upon any prerogative power, and is now regarded in much the same light as other process." See also High on Extraordinary Legal Remedies, 8.

It must be conceded that in other proceedings at the common law a writ of error is a supersedeas of the execution of the judgment upon which it is based. It is so in England ;

it is so in this state; and it is generally so in all the states of this country. It is unnecessary to cite authorities upon this subject, for it will be conceded.

Now if in modern practice writs of error will lie in cases of mandamus, why should they not operate in those cases in the same manner as in other actions, and suspend the execution of the judgments they call in question, *pendentibus litibus?* Certainly there is as much cause for a suspension of the execution of the judgment in this form of action as in any other. A writ of error is the same in its nature in every respect whether the judgment it calls in question was rendered in one form of action or another. If in one form of action a writ of error, *ipso facto*, suspends the execution of the judgment, what reason can be given why it should not do so in another?

A distinction is attempted to be made growing out of the fact that the judgment upon which the writ of error under consideration is based, was rendered in accordance with the advice of this court given upon a reservation of the case by the Superior Court for our advice; and it is said that, however it may be in other cases of mandamus, the execution of a judgment thus rendered should not be stayed by a writ of error. This distinction applies as much to other actions at the common law where judgments are rendered under like circumstances, as to proceedings by mandamus. The claim seems to regard it as derogatory to the dignity of this court, and as conflicting with its decision, that a writ of error should stay the execution of a judgment rendered in accordance with its advice. But this court simply advised the court below in regard to the judgment which should be rendered. It never advised that court, (and never does,) to carry the judgment, when rendered, into immediate execution, whether a writ of error should be interposed or not. It is plain therefore that a suspension of the execution of the judgment can not conflict with the advice of this court. The object of this writ of error is to take the case to the Supreme Court of the United States for final adjudication regarding the legality of the judgment; and why, if the case be one that falls within

the jurisdiction of that court under the constitution, is it any more derogatory to the dignity of this court that the writ of error should stay the execution of the judgment till that court shall have an opportunity to hear the case, than it is to the dignity of the Superior Court that a writ of error to this court should stay the execution of a judgment rendered by it? It seems to me far more in accord with the dignity of this court that parties should have full and untrammeled opportunity to resort to all the means afforded by the law and the constitution, to test the legality of any judgment rendered by it or rendered in accordance with its advice.

I am therefore unable to discover any substantial reason why this writ of error, or any other in cases of mandamus, should not have the same effect to suspend the execution of the judgment it calls in question, that it has in all other proceedings at the common law. In other cases at the common law it is considered unjust that the judgment should be carried into execution while process is pending to test its validity. The reason is obvious. The law gives to parties the right to review the decisions of the lower courts, and if the decisions are to be carried into effect before a review can be had the right would in many cases be worthless. Take, for instance, cases where a peremptory mandamus is issued to compel the guarantee of negotiable instruments, like the case of *The New Haven, Middletown & Willimantic R. R. Co.* v. *The Town of Chatham*, 42 Conn., 465, where the proceeding was brought to compel the town to guarantee forty thousand dollars of bonds belonging to the railroad company, what would the right of review have been worth in that case if the court below had erroneously granted the mandamus, and no stay of proceedings had been had?

But it is said that a court would always order a stay of proceedings in cases where irreparable injury might accrue. The same might be said with equal propriety in all cases where a writ of error is unquestionably a supersedeas of the execution of the judgment, and why leave cases of this character to the discretion of the court any more than others? In other cases the danger is that a court may err in its dis-

cretion.   A judgment might appear to the court rendering it manifestly correct, in which case a stay of proceedings would be refused.   The law therefore allows no discretion in the matter, but makes the service of a writ of error suspend the execution of the judgment.

But the court rendering a judgment has no jurisdiction over a writ of error brought to review it.   Writs of error are independent proceedings.   They may be brought in vacation as well as during the session of the court.   They are brought directly to the higher court, and the lower court can do nothing that will interfere in any way with its operation or effect.   What jurisdiction has the Superior Court over this writ of error brought directly to this court to determine whether or not the execution of the judgment upon which it is based should be suspended?   If the writ *ipso facto* suspended proceedings in that court, there is no power known to the law by which the suspension can be vacated during the pendency of the proceeding except that vested by statute in the judges of the Supreme Court of Errors.   Gen. Statutes, p. 452.   This statute recognizes the fact that a writ of error suspends the execution of the judgment it calls in question in all cases whatsoever, and is tantamount to a direct declaration to that effect; and by necessary intendment denies the right of any court or judge except those specified to vacate the suspension.

I might cite the long practice which has been pursued in the state in relation to proceedings by mandamus.   A large number of cases of this character have come before this court within a few years, by motions in error, and by writs of error, and it is believed execution of the judgments has been stayed by them without exception, and without objection by counsel.   I might also refer to the practice in relation to the analogous process of quo warranto, concerning which a similar procedure has been pursued, thus tending to show a common law of our own on the subject.   But I do not care to discuss the matter further.   I am of the opinion that the writ of error in the case of *The State* v. *The New Haven & Northampton Company*, was a supersedeas of the execution

of the judgment rendered in that case, and consequently that the court below had no jurisdiction of the contempt proceedings in this case.

I think the judgment of contempt should be reversed.