## LITTLEFIELD *et al.* v. TOWN OF ADEL *et al.*

1. After the officers of a municipality have been adjudged guilty of contempt in refusing to obey a mandamus absolute and the contempt judgment has been reviewed and affirmed by the Supreme Court, such officers will not be relieved because their terms of office have expired since the rendition of the contempt judgment and they have ceased

to hold such offices. The court erred in granting an interlocutory injunction restraining the sheriff of the county from executing the process for contempt.

2. The writ of injunction will not issue to restrain a sheriff or other officer from executing a judgment of contempt issuing from a court of competent jurisdiction.

No. 2194.   JULY 13, 1921.

Injunction. Before Judge Dickerson. Cook superior court. July 26, 1920.

Littlefield brought a suit for damages against the Town of Adel, and procured judgment. Upon refusal of the town officials to make payment of the amount of the execution, he obtained mandamus absolute, and upon their refusal to comply therewith the defendants were adjudged in contempt. They brought the contempt case to this court, and while it was pending here an election was held and the defendants who had been adjudged in contempt were succeeded by other officials. This court affirmed the judgment of the court below. The defendants thus adjudged in contempt (who had been the acting mayor, clerk and treasurer, and councilmen of the town) filed an equitable petition praying injunction to prevent the execution of the attachment for contempt, for the reasons: (a) that petitioners never, while they were officials of the Town of Adel, had in their hands funds with which they could legally pay said judgment; (b) because at the time the judgment of the court below, holding them to be in contempt, was affirmed by the Supreme Court, they had each and all gone out of office and had no control over the funds belonging to the Town of Adel, and were powerless to comply with the order requiring them to pay over the money; (c) because the officials of the city who had succeeded the petitioners did not then have in their hands funds from which the payment could legally be made, even if petitioners could control such funds; (d) because when petitioners were succeeded in office by others, the mandamus proceeding and the attachment for contempt brought thereon immediately became void and of no effect so far as petitioners were concerned. Littlefield answered and pleaded specially that all the facts, matters, and issues sought to be raised by the petition had been finally adjudicated adversely to the petitioners, and that they were therefore estopped from litigating the matter further.

Upon interlocutory hearing the court made the following judgment: "The sheriff of Cook County, Georgia, is hereby restrained

and enjoined from executing the process for contempt referred to in the above petition against those officers whose commission as officers of the Town of Adel has expired and who are the plaintiffs in the above-stated case." Error is assigned on this judgment, on the ground that it is contrary to the pleadings, the evidence, and the law of the case, because all the issues raised by the petition for injunction had been finally adjudicated adversely to the plaintiffs, and because the court was, for that reason, without jurisdiction to grant rule nisi or injunction. In the brief of counsel for the plaintiffs in error it is stated that "the only new matter" involved in this record is the question that pending the appeal from the judgment of the court below, holding the defendants in contempt, "an election was held in the Town of Adel, in which an entirely new and different set of officers, except the clerk and treasurer, were elected by the people, and that the clerk and treasurer's term of office expired at the time the new mayor and councilmen were installed in office, and that he was thereafter re-elected, which made him a new and different officer; so that the town was operating with an entirely new set of officers." In the brief of defendants in error it is stated: "The injunction was sustained solely upon the ground, as therein expressed, that defendants in error, the ex-mayor and councilmen and clerk and treasurer of the Town of Adel, had already gone out of office and their successors elected and qualified." The order adjudging the petitioners in contempt was passed by Judge Thomas of the Southern Circuit, to which Berrien County containing the Town of Adel was at the time attached. Subsequently the County of Cook was created, with Adel as the county site, and attached to the Alapaha Circuit. The interlocutory injunction was granted by Judge Dickerson of that circuit. The terms of office being served by all of the petitioners at the time they were originally adjudged in contempt for the refusal to pay over the funds had expired before the judgment of this court, affirming the judgment of the court below, was made the judgment of that court. Other persons had been elected to each of the offices, except in the case of the clerk and treasurer, who was re-elected.

*R. A. Hendricks,* for plaintiffs in error. *J. P. Knight,* contra.

GILBERT, J. A mandamus absolute was directed against the Town of Adel. The obligation imposed by such judgment de-

volved upon no particular set of municipal officers, but is perpetual against the persons then holding the offices and their successors in office. The proceeding is really against the township, whether or not the names of any particular officers are mentioned. The resignation of any officer, or all of the officers, during the pendency of the proceeding for mandamus would not involve an abatement of the suit. If it were otherwise, " we would always have the unseemly spectacle of constant resignations and reappointments to avoid the effect of the suit." Thompson *v.* United States, 103 U. S. 480 (26 L. ed. 521) ; Maddox *v.* Graham, 59 Ky. (2 Metc.) 56. As stated in the latter case, it may assume the character of an individual proceeding if it becomes necessary to enforce the orders of the circuit court by attachment or other process for contempt, but a change in the membership of the board does not so change the parties as to abate the proceeding. The constituent parts of the board may not be the same, but the representative body remains identical. If, after the mandamus absolute has been rendered, one or more of the public officials affected thereby should refuse to obey its mandate while still able to comply, he may be attached for contempt and his subsequent resignation will not absolve him from some degree of punishment, although at the time he is finally adjudged in contempt he may then be unable to comply with the peremptory mandate, because of the expiration of his term of office. If by reason of such change, resignation, or expiration of the term of office subsequent to the issuing of the writ of mandamus the writ cannot or ought not to be enforced, these facts should be made known, by proper proceeding, to the court issuing the writ, which alone has jurisdiction over it. A writ of mandamus absolute issued by a court of competent jurisdiction, " when once issued, cannot, like an ordinary execution upon a judgment at law, be stayed by injunction, and to allow such interference would necessarily lead to a conflict of jurisdiction and interrupt the whole course of judicial proceedings." High on Extraordinary Legal Remedies, 519, § 567; Weber *v.* Zimmerman, 23 Md. 45. As stated in the Weber case, such a course would " lead to a conflict of jurisdiction, producing the greatest confusion, and tending to subvert the administration of justice." Further quoting from High on Extraordinary Legal Remedies (p. 521) : " If a judge has already resigned

his office, while it is true that he cannot be required by mandamus to perform any judicial act connected therewith, yet if he had refused while still in office to do the act required by the mandamus, as to sign a bill of exceptions, he may be punished by fine as for a contempt, since the superior tribunal, having properly acquired jurisdiction over the respondent in the first instance to compel him to perform the required act, can not be divested of its power to punish for contempt by his resigning the office. And while it is conceded that one important object to be attained in punishing for the contempt is to compel the party to perform the required act, it by no means follows, because this cannot be attained, that no punishment should be inflicted." In the present case the facts are perhaps further removed from the possibility of relief by injunction. Not only had the writ of mandamus absolute been rendered prior to the expiration of the term of office of the petitioners, but they had been cited for contempt and had been tried therefor and formally adjudged in contempt of the court for failure to comply with its judgment of mandamus. That judgment has never been set aside, but upon the contrary was affirmed by this court. *Town of Adel* v. *Littlefield,* 149 *Ga.* 812, 815 (102 S. E. 433). Nothing, therefore, can be conceived as more definitely settled than that the petitioners were required by valid mandamus absolute to perform an official act; that they were able to comply with such judgment, had failed and refused to do so, and were in contempt of the court. When that case was here it was said: "The question as to whether the town had the funds in hand to pay this [judgment] was an issue before the judge at the hearing of the application for mandamus; and his judgment ordering the payment, instead of a judgment ordering the levy of a tax with which to raise the necessary money, adjudicated the question as to whether or not the town had the funds with which to meet the judgment, and decided that question against the contention of the defendants. Whether the judge found erroneously, under the facts submitted, that the town did have the necessary funds, is not before us. The judgment was conclusive upon that question." *Town of Adel* v. *Littlefield,* supra. And, again referring to the same judgment, the court said: " But the judgment for mandamus absolute, as we have pointed out above, stands. It was a judgment rendered by a

court of competent jurisdiction. . . There was no question as to whether or not they had funds in their hands, so as to make an issue of fact which would require submission to a jury. The mandamus absolute settles the question as to whether they had the funds or not, and a refusal to obey that judgment rendered the respondents in the contempt proceedings liable to punishment for contempt for refusal to obey the mandamus absolute according to its terms." In some States contempt judgments are not reviewable. One of the reasons assigned is that if a writ of error should lie, and should have the effect of staying execution upon the judgment, the effect would be that "parties guilty of the grossest and most aggravated contempts may set the courts at defiance, obstruct the regular course of justice, and suspend if not totally elude punishment at their own will and pleasure." On this subject see Tyler v. Hamersley, 44 Conn. 393, 412, 419 (26 Am. R. 479), and authorities cited.

In this State judgments for contempt as a general rule are reviewable, but there is a wide distinction between reviewing a judgment of contempt and restraining by injunction the execution of such a judgment valid and binding in every particular. In 6 Ruling Case Law, 539, it is said: "An injunction will not lie to prevent the carrying out of a judgment for contempt." As authority for this statement the case of Tyler v. Hamersley, supra, is cited, wherein it was said that a court of equity has no jurisdiction to grant an injunction to stay the execution of a judgment for contempt. The officials of the New Haven & Northampton Company, a railroad corporation, had been required by a writ of peremptory mandamus to stop its freight and passenger trains at the village of Plantsville, and, having disobeyed the order of the court, were adjudged in contempt. Their effort to have the judgment of contempt reviewed by the Supreme Court of Connecticut failed. A petition was then filed, as in the present case, for an injunction to restrain the execution of the order of the court for the commitment of the petitioners for a contempt in disobeying the writ of mandamus. In the opinion in the case denying the injunction it was said: "Courts . . are clothed with jurisdiction to restrain, by injunction, proceedings at law in all cases, where by fraud, accident, mistake, or otherwise a party has obtained an advantage in a court of law, which must neces-

44

sarily make that court an instrument of injustice. In cases of that description the restraint may be imposed to stay trial, and after trial and verdict to stay judgment, after judgment to stay execution, and after execution to stay money in the hands of the officer. But after a judgment an injunction will not be granted to stay its execution, unless there has been fraud or collusion in obtaining it or the verdict upon which it was founded, or where the party has been unable to defend himself effectually at law, without any fault or negligence of his own, or where the plaintiff has possessed himself of something by means of which he has obtained an unconscientious advantage. When an injunction is granted to stay proceedings in the courts of law, it is in no just sense a prohibition to those courts in the exercise of their jurisdiction. It is not addressed to them, and does not even affect to interfere with them. The process is directed only to the parties. It neither assumes any superiority over the court in which the proceedings are had, nor denies its jurisdiction. It is granted on the sole ground, that, from certain equitable circumstances of which the court granting the process has cognizance, it is against conscience that the party inhibited should proceed in the cause." Applying these principles to the facts of that case it was further said: "The facts charged in the bill show no title whatever in the plaintiffs to equitable relief, and are not even within the jurisdiction of a court of equity. It is an established rule that courts of equity will grant no injunction, or order in the nature of an injunction to stay proceedings in any criminal matter. If they should do so, said Lord Holt, C. J., the court of Queen's Bench would break it, and protect any that would proceed in contempt of it. Holderstaffe v. Saunders, 6 Mod. 16. And Lord Hardwicke allowed a demurrer to a bill for an injunction to stay proceedings on a mandamus issued to the lord of a manor to hold a court. 'The court,' he said, 'has no jurisdiction to grant an injunction to stay proceedings on a mandamus, or on an indictment, or on an information or a writ of prohibition.'"

The terms of office of the defendants in error expired after the rendition of the judgment finding them to be in contempt; they sued out a writ of error to that judgment, and the judgment of this court was rendered subsequently to the expiration of their

terms of office. What effect these facts should have in modify-
ing or abrogating the judgment of contempt when modification
or abrogation is sought rests primarily with the superior court
which rendered the judgment, by petition praying for modifica-
tion, but not by means of the extraordinary writ of injunction.
In the case of *Thweatt* v. *Kiddoo,* 58 *Ga.* 300, it appears that
Thweatt had violated an injunction restraining the sale of per-
sonal property, and was adjudged in contempt of court therefor,
and that judgment had been affirmed by this court. After the
judgment of the Supreme Court had been made the judgment of
the superior court Thweatt filed a petition in the latter court,
tending to show that he had been misled, offering to make resti-
tution in part, and alleging that he had not the means to fully
comply with the original judgment against him. The petition
was accompanied with a motion that he be discharged from the
contempt. The court overruled the motion, and ordered that
Thweatt be committed for contempt. Thweatt presented a bill
of exceptions, which the presiding judge refused to certify, be-
cause all the material questions had been adjudicated before, and
the orders granted were only carrying out the decision already
made. Thweatt then petitioned the Supreme Court for a writ
of mandamus compelling Judge Kiddoo to certify the bill of ex-
ceptions. A nisi was issued by this court, and on the filing of
the answer by respondent the mandamus absolute was refused.
In the opinion written by Bleckley, J., it was said: " What would
be cause for terminating, after a reasonable time, imprisonment
employed as a remedy without producing remedial results, is not
now in question. The question of contempt was settled at a pre-
vious term, on substantially the same facts as are contained in
this record — 56 *Ga.* 98. Nothing new has happened to purge
the contempt. The alleged inability, from poverty or otherwise,
to comply with the order of the court is not proved to have origi-
nated since that order was passed. The imprisonment has not
even commenced. After imprisonment has been tried for a rea-
sonable time and proved unfruitful as a remedy, the question
can be made how and when it ought to terminate. . Doubtless
there is some way to reach a case of bona fide poverty, and pre-
vent imprisonment from becoming perpetual, or even from being
unduly protracted. But the poor cannot be indulged in willful

disobedience to the lawful commands of a court, any more than the rich. The action of the court, now complained of, was not the rendition of a new judgment, but the refusal to stop short in the execution of the judgment formerly rendered. The judge was right in refusing to sign and certify another bill of exceptions." *Thweatt's* case, it must be remembered, arose on an application to the court to revoke or modify the contempt judgment. It did not seek to employ the writ of injunction to prevent the enforcement of a valid judgment. That the plaintiffs in this case may be punished, as a consequence of our ruling, notwithstanding their terms of office subsequently expired, would not justify us in abandoning established law. To do so would create a dangerous and mischievous precedent. They have chosen the wrong remedy when they could have pursued the right remedy. Moreover, the right remedy is yet available. The judgment sought to be enjoined in this case prescribes punishment for failing and refusing to comply with the mandamus absolute when they were able to comply. It does not undertake to punish for refusal after their terms of office expired and they were unable to comply. The order upon which error is assigned does not undertake to vacate or modify the contempt judgment. It is explicitly an interlocutory injunction. Applying the principles above stated, we conclude that the judgment restraining the sheriff from proceeding to execute the judgment of contempt was contrary to law, and must be set aside.

*Judgment reversed. All the Justices concur, except Fish, C. J., and Atkinson, J., dissenting.*

ATKINSON, J. In an action for damages based on a tort Littlefield obtained a money judgment against the Town of Adel, Georgia. Subsequently the plaintiff instituted a mandamus suit against the municipality, to compel payment of the judgment. On September 25, 1918, Judge Thomas of the Southern Judicial Circuit, in whose jurisdiction the suit was instituted, granted a judgment absolute, commanding the Town of Adel and certain individuals " as acting mayor " and " as acting secretary and treasurer " of the municipality to pay over to plaintiff instanter the amount of the judgment. On May 23, 1919, the plaintiff instituted a contempt proceeding against the Town of Adel and certain individuals who were acting respectively as mayor, secretary and treasurer, and councilmen,

based on the refusal to pay the judgment as ordered in the mandamus absolute. On May 28, 1919, the contempt case was heard before Judge Thomas, and a judgment was rendered declaring: " it is therefore ordered by the court that [the officers of the municipality, naming them] be and they are each hereby required and ordered to pay over to said plaintiff or his counsel the said sum [setting out the amount of the judgment], or in default thereof that they and each of them be attached for contempt of court." On June 10, 1919, the clerk of the superior court issued " process " commanding the sheriff " to arrest " the individuals adjudged in contempt, " and commit them to jail as for contempt of said court in their failure to pay said judgment as aforesaid." Before execution of this process the terms of office of each of the individuals mentioned in the judgment for contempt expired, and with one exception other individuals were elected and qualified as their successors; so that such persons had no authority over the municipal property or the municipal affairs. On account of change of judicial circuits, Judge Dickerson of the Alapaha Circuit succeeded to the jurisdiction in that territory which had theretofore been exercised by Judge Thomas. On April 5, 1920, when the sheriff was about to arrest and imprison the defendants, in execution of the writ issued by the clerk, they presented to Judge Dickerson an equitable petition against the sheriff and the plaintiff named in the common-law judgment against the Town of Adel, praying to vacate the mandamus absolute and judgment of contempt and to enjoin the sheriff and his deputies from executing the process issued by the clerk, on the ground, among others, that such process was void. At the hearing the judge granted an order which declared: " The sheriff . . is hereby restrained and enjoined from executing the process for contempt . . against those officers whose commission as officers of the Town of Adel has expired and who are the plaintiffs " in this case. The exception is to this judgment. While the mandamus absolute and judgment for contempt were rendered by Judge Thomas and the judgment restraining the sheriff was rendered by Judge Dickerson, the latter judge, on account of change in judicial circuits, was successor to the former in jurisdiction of the case, and consequently all the judgments issued from the same court. While in the form of an equity suit, the petition presented was in effect a petition to the court which had granted the man-

damus absolute and judgment for contec.pt, to vacate those orders, purge the contempt, and prevent arrest and imprisonment under the process issued by the clerk. The substance and not the style of the action determines its character. *Lambert Hoisting Engine Co.* v. *Dexter,* 127 *Ga.* 581 (56 S. E. 778). It is not a case where one court is asked to interfere with the judgment of another court in respect to a matter of contempt, but is one in which the contemnor petitions the court which adjudged him in contempt; and the petition, whatever its form, was a sufficient basis for the judge to take jurisdiction and grant the relief which was granted. In *Nisbet* v. *Tindall,* 115 *Ga.* 374 (41 S. E. 569), a receiver was adjudged in contempt and imprisoned for failure to pay over money coming into his hands as an officer of court. His petition was for discharge on the ground of poverty and his inability to pay the amount he was ordered to pay. The judge ordered his discharge. In affirming that judgment this court in the course of the opinion said: " It should now be regarded as definitely and finally settled, that, in all cases. of this character, the question of discharging from custody an officer of the court, who has been imprisoned for not paying over money or delivering property, must be left to the sound discretion of the trial judge, and that he shall have exclusive control of the matter." There is no reason why the same rule should not apply where the contemnor is other than an officer of the court, and where his term of imprisonment has not commenced. Having the right to apply for discharge, what are the merits of the grounds of relief? Those adjudged in contempt subsequently lost all power to comply with the terms of the mandamus absolute, by expiration of their terms of office, and the election and qualification of their successors (except one). This inability to comply would have been ground of defense before the judgment of contempt, and, having arisen after judgment of contempt, was sufficient ground for subsequent discharge of the contemnor. *Nisbet* v. *Tindall,* supra; 13 C. J. 95, § 148; see also cases cited in 6 R. C. L. 537, note 11. All that is said would apply had the judge sentenced the contemnors to arrest and imprisonment. But he did not do so. The proposed arrest and imprisonment were under a so-called " process " issued by the clerk of the court. That process issued by the clerk was strictly penal, and to be valid must be clearly authorized by a statute or judgment of the court strictly construed. It was unfounded,

because the judgment in the contempt proceeding, on which reliance was had for its basis, did not declare that the defendants should be arrested or imprisoned, and there is no statute authorizing the clerk to issue any such commitment. The imposition of a penalty for contempt is the sentence of the court, a judicial function involving discretion of the judge, and not a mere ministerial act that could be performed by the clerk. The judge could have fined the contemnors or committed them to jail, or in his discretion omitted any punishment additional to the judgment of contempt. But the clerk was wholly without power to commit the contemnors to imprisonment, and the process issued by him was void for any such purpose. Being void, the judge could treat it as a nullity and instruct the sheriff to disregard its commands. That is in effect all that he did, and his judgment should not be reversed.

FISH, C. J., concurs in the dissent.